**Joseph J. BYRNES et al., Plaintiffs,**

v.

**IDS REALTY TRUST et al., Defendants.**

**Civ. A. No. M8–85.**

United States District Court,
S. D. New York.

Feb. 28, 1980.

See also D.C., 70 F.R.D. 608.

Schwartz, Alschuler & Grossman, Los Angeles, Cal. by Frank M. Kaplan, Marshall B. Grossman, Robert A. Shlachter, Los Angeles, Cal., and Lindquist & Vennum, Minneapolis, Minn. by Laurance R. Waldoch, N. L. Newhall, Minneapolis, Minn., for plaintiffs.

Marshall, Bratter, Greene, Allison & Tucker, New York City by Richard L. Bond, Michael L. Hirschfeld, New York City, for Donovan Leisure Newton & Irvine.

Leonard, Street & Deinard, Minneapolis, Minn. by George F. McGunnigle, Jr., Harold D. Field, Jr., James V. Roth, Minneapolis, Minn., for defendant Allegheny Corp.

J. F. Grinnell, Senior Vice President and Gen. Counsel, Minneapolis, Minn., for defendant Investors Diversified Services, Inc.

Gordon L. Eid, Vice President and Gen. Counsel, Minneapolis, Minn., for defendant IDS Mortgage Corp.

## OPINION

TENNEY, District Judge.

On August 21, 1979, plaintiffs in a Minnesota action filed a motion pursuant to Federal Rules of Civil Procedure ("Rules") 37 and 45 to compel deposition testimony and document production by Donovan, Leisure, Newton & Irvine ("Donovan Leisure"), a New York City law firm, and two of its partners, John Tobin and Roger Pugh (the firm and the two partners will be referred to collectively as "attorney witnesses"). On October 1 this Court referred the motion to Magistrate Harold J. Raby to hear and determine pursuant to 28 U.S.C. § 636(b)(1)(A).

After extensive briefing and oral argument, Magistrate Raby determined the motion by Memorandum and Order dated December 28, 1979. Attorney witnesses, on January 8, 1980, filed a motion objecting to portions of the Magistrate's Memorandum and Order as contrary to law or clearly erroneous. The date for oral argument was postponed until January 31 to give counsel from California, Minnesota and New York ample time to brief the issues fully. After considering the papers submitted on the motion to compel testimony and document

production, as well as the papers submitted on the motion objecting to the Magistrate's Memorandum and Order, and after hearing thorough oral argument on the second motion, the Court concludes that the Magistrate's Memorandum and Order must be affirmed in part and reversed in part. The Court affirms Magistrate Raby's conclusion that the attorney-client privilege applies to the documents sought by the plaintiffs, but reverses the Magistrate's conclusion that the privilege has been waived.

## BACKGROUND

The Minnesota litigation giving rise to this ancillary proceeding combines class and individual actions in the United States District Court for the District of Minnesota. In the Joseph J. Byrnes' action, one of five actions consolidated for trial, plaintiffs sued IDS Realty Trust (the "Trust"), a publicly owned real estate investment trust, IDS Management Corporation, which provides management services to the Trust, Investors Diversified Services, Inc. ("IDS"), which wholly owns IDS Management Corporation, and certain officers, directors and trustees of the Trust and IDS Management Corporation. The Byrnes plaintiffs (referred to herein simply as "plaintiffs") assert causes of action under the federal and Minnesota securities laws and breaches of fiduciary duties. They allege that they were induced by materially false statements of the defendants to purchase stock of the Trust. They point to as false (1) a Form S–11 Registration Statement regarding a proposed Series F debenture offering that contained audited figures for the first half of 1974 and (2) a February 14, 1975 press release announcing the Trust's unaudited earnings for the year ending January 31, 1975 and declaring a dividend for the fourth quarter of that year. These documents allegedly misrepresented the financial health of the Trust.

Donovan Leisure and partners Tobin and Pugh have not been named as defendants in the Minnesota litigation. Their involvement stems from their role as counsel to parties to the litigation. Donovan Leisure has served as general counsel to IDS and as special counsel to its subsidiary, IDS Mortgage Corporation. It has also served as outside general counsel to Allegheny Corporation, which was the controlling shareholder of IDS until May 1979, when the latter was merged into a subsidiary of Allegheny. Allegheny is not a party to the Byrnes action, but it is a defendant in two of the actions consolidated for trial, and it appears in order to object to the Magistrate's Memorandum and Order to the extent that it would require disclosure of privileged documents or testimony growing out of its client-attorney relationship with Donovan Leisure. Partners Tobin and Pugh have at all relevant times been in charge of work for these Donovan Leisure clients.

Donovan Leisure explains its involvement in the particular subject matter of the Minnesota litigation as follows. From 1972 to 1974, the Trust made a series of public debenture offerings in which Donovan Leisure had only a limited participation as counsel for IDS. In November 1974, a preliminary S–11 Registration Statement was filed for another debenture offering. At that time Donovan Leisure was asked to assume a greater role in advising IDS and IDS Mortgage Corporation regarding legal matters relating to the proposed offering. Minutes from the December 18, 1974 IDS board of directors meeting indicate that increased involvement by Donovan Leisure was sought because of the unfavorable conditions then prevailing in the real estate industry.

On December 27, 1974, the SEC sent a comment letter concerning the preliminary registration statement filed in November. The letter referred to a dispute between the Trust and Peat, Marwick, Mitchell & Co. ("Peat Marwick"), auditors for IDS and for the Trust, regarding the treatment of certain items for financial reporting purposes. On January 6, 1975, Peat Marwick sent a letter to IDS Mortgage Corporation that Donovan Leisure viewed as an attempt to make a record. Against this background, Donovan Leisure sought to determine, among other things, whether the usual

quarterly statement should be issued. It made inquiries, particularly of Peat Marwick, and attempted to ascertain the effect on the market of not issuing a statement. A statement was issued on February 14, 1975. In April, Peat Marwick found the figures materially wrong: the Trust had losses, rather than earnings as reported. In May, the Byrnes plaintiffs and others sued.

In the spring of 1976 the Chicago Regional office of the SEC sought, as part of a private investigation, information that would explain the disparity between the February 14, 1975 figures and the later audited figures, which described greater nonearning assets. At the end of 1976 a detailed response to the SEC inquiry was prepared. The response included a memorandum of counsel that was signed by Donovan Leisure, two Minneapolis law firms, and by lawyers at IDS. The memorandum stated, *inter alia,* that Donovan Leisure had advised that an earnings statement be issued, and indicated Donovan Leisure's work regarding the proposed debenture offering (subsequently dropped).

In April 1979, Tobin and Pugh were served in their New York City offices with deposition subpoenas *duces tecum* issued by this Court in connection with the Minnesota litigation. At depositions they refused to answer certain questions or withheld certain documents; they asserted, as instructed by their clients, the attorney-client privilege and, in some cases, the work-product exemption of Rule 26(b)(3). Plaintiffs subsequently moved to compel testimony and document production.

*The Motion and Magistrate's Memorandum and Order*

To support their motion to compel, the plaintiffs argued as follows:

(1) the attorney-client privilege does not apply because the bulk of the documents. are analyses, tables or memoranda regarding the financial condition of the Trust, which was not a Donovan Leisure client;

(2) the attorney-client privilege does not apply to the extent that the communications constitute business, as opposed to legal, advice;

(3) IDS and IDS Mortgage Corporation have waived the attorney-client privilege, if any exists, by relying on the "advice of counsel" defense;

(4) alternatively, the defendants waived any attorney-client privilege by the selective disclosure to the SEC; and

(5) defendants may not rely on the work-product immunity because the documents were generated months before any lawsuit was threatened or filed.

The attorney witnesses responded as follows:

(1) plaintiffs misapprehend the reasons for asserting the attorney-client privilege and work-product immunity, mischaracterize Donovan Leisure's services to its clients, and ignore the fact that the overwhelming majority of the documents in issue have already been produced or are available through production from defendants in the Minnesota litigation;

(2) IDS, IDS Mortgage Corporation and Allegheny have not asserted an "advice of counsel" defense in the Minnesota litigation, and will not do so unless the privileged communications or work-product materials are ordered disclosed;

(3) the limited disclosures made to aid a private SEC investigation to which plaintiffs were not parties does not constitute a blanket waiver, especially in view of controlling Eighth Circuit authority recognizing only a limited waiver in such circumstances; and

(4) the possibility of litigation was genuine, likely and imminent well in advance of the commencement of suit and at all times for which the work-product immunity has been invoked.

In addressing these arguments, Magistrate Raby first set out the background of the proceeding. He then divided the contested documents into four categories: (1) those generated within Donovan Leisure or received by it from its clients to enable it to render legal advice; (2) tables, analyses and reports based on factual data prepared by Donovan Leisure's clients or by third par-

ties, on which documents Donovan Leisure placed notes in connection with furnishing legal advice; (3) those received after litigation was threatened or commenced to enable Donovan Leisure to prepare for litigation, which documents were withheld under the work-product immunity, and (4) those previously withheld by Magistrate Robert G. Renner during discovery proceedings in Minnesota. Memorandum and Order, dated December 28, 1979, at 2–3.

Magistrate Raby first held that the attorney-client privilege could properly be invoked for all of the documents described above. *Id.* at 3–9. In so holding, he rejected the contention that Donovan Leisure rendered purely business advice. He concluded, rather, that its participation in the affairs of its clients "amounted to no more than providing necessary expertise as experienced Securities lawyers" and that plaintiffs had, in effect, conceded as much. *Id.* at 4–5. He recognized that "[e]specially in the realm of complex securities fraud litigation, economic and business interests are matters clearly within the professional competence of an attorney." *Id.* at 5.

Magistrate Raby also concluded that the privilege applies even though many of the documents consisted of analyses, tables and graphs containing technical information regarding the Trust's finances. *Id.* at 6. Implicit in his general discussion, *id.* at 7, is the finding made expressly in his introduction, *id.* at 2–3, that the technical documents were provided in giving, or to facilitate giving, legal advice. Moreover, that the information in these documents was not necessarily confidential "—that is, known only to the client—" does not defeat the privilege as long as the communication is made in confidence. *Id.* at 7. Magistrate Raby then noted

> that we are not dealing with a case where documents have been directed to an attorney for the purposes of shielding them from disclosure, in which case it would be patently unfair to adhere to a claim of privilege. Most of the documents here in issue have already been produced by or are available through production from de-

fendants in the Minnesota litigation in "clean form," i. e., without the notations and comments written upon them by Donovan Leisure attorneys. It thus becomes exceedingly difficult to find cause to abrogate the attorney-client privilege where plaintiffs' production is designed solely to intrude upon the mental processes of legal counsel.

*Id.* at 7–8. Finally, in reaching his holding that all of the documents were privileged, Magistrate Raby rejected as unsupported suggestions that the communications between Donovan Leisure and its clients were in furtherance of a fraud and that the privilege was thereby abrogated. *Id.* at 8–9.

Secondly, however, the Magistrate held that the attorney-client privilege had been waived by the defendants' voluntary disclosure to the SEC in connection with the agency's informal investigation into the affairs of the Trust. *Id.* at 9–12. Notwithstanding his discussion of cases where only limited waivers had been found, he concluded that the attorney-client privilege cannot be selectively waived. Any disclosure to third parties defeats the privilege. *Id.* at 9–10.

> The waiver doctrine is founded upon principles of fundamental fairness. A party cannot disclose only those facts beneficial to its case and refuse to disclose other, related facts on the grounds of privilege adverse to its position. . .
>
> [C]ases . . . permitting a limited waiver suggest that strong policy considerations necessitate sustaining the privilege notwithstanding the disclosure to a third party, where serious questions of fairness do not arise and where the party attacking the privilege has not been prejudiced by the disclosure. Such is not the case here where the documents withheld would unfairly deprive plaintiffs of access to facts relevant to the subject matter disclosed in the already produced documents to the SEC.

*Id.* at 10–11.

Magistrate Raby noted that he extended "due deference" to the law of the Eighth

Circuit, as the circuit of the trial forum. *Id.* at 11, 15. He concluded, however, that defendants' principal reliance on *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596 (8th Cir. 1977), was misplaced. Memorandum and Order at 9. He interpreted that case as limited to the context of "an investigation conducted by special counsel hired for the sole purpose of investigating allegations of impropriety and advising the corporation in order to protect shareholders." *Id.*

Despite Magistrate Raby's determination that the defendants had waived the attorney-client privilege, but in conformity with the deference he extended to the Eighth Circuit, he upheld the privilege wherever it was found by Magistrate Robert G. Renner in the Minnesota litigation. *Id.* at 10.

In the third section of his Memorandum and Order, Magistrate Raby upheld the claim of work-product immunity as to the documents withheld on that ground. *Id.* at 12–15.

> [D]efendants have specifically enumerated those documents as to which they claim work product privilege, and state that these materials were received after litigation had been threatened or commenced, for the purpose of aiding in Donovan Leisure's preparation for litigation (Donovan Leisure Affidavit, p. 6). Nowhere does Donovan Leisure attempt a blanket assertion of the work product with respect to all the documents.

*Id.* at 14. He found, furthermore, that plaintiffs had "not made a sufficient showing of substantial need or undue hardship in obtaining the substantial equivalent of the materials." *Id.* at 15. Finally, Magistrate Raby noted that he was extending "due deference" to the Eighth Circuit, which "employs a strict protective approach in determining the scope of the work product privilege." *Id., citing In re Murphy,* 560 F.2d 326 (8th Cir. 1977).

*Objections to the Magistrate's Memorandum and Order*

The attorney witnesses move for reconsideration of Magistrate Raby's Memorandum and Order insofar as it requires further document production or deposition testimony by them. Specifically, they contend that the Magistrate erred because:

(1) the voluntary submission to the SEC, in aid of an SEC investigation, does not waive the attorney-client privilege as to third parties, such as the plaintiffs;

(2) even if the attorney-client privilege were waived, the waiver must be limited to the subject of the disclosure—the February 14, 1975 press release—and may not extend to documents unrelated to that press release;

(3) even if the attorney-client privilege were waived, it was not waived as to Allegheny;

(4) and, finally, his Memorandum and Order undercuts discovery orders of District of Minnesota Magistrate Robert G. Renner by requiring the production of documents similar or identical to documents held protected by Magistrate Renner.

In response to the attorney witnesses' motion for reconsideration, plaintiffs reassert "that Donovan Leisure has failed to meet its burden of proving that it was entitled to either the protection of the attorney-client privilege or work-product doctrine (in those few instances where it sought shelter under that doctrine)." Memorandum in Opposition to Motion for Reconsideration at 3 n.*. Accordingly, they request that the Court also reconsider the conclusions of the Magistrate not challenged by the attorney witnesses.

## DISCUSSION

■ The Court concludes at the outset that the Magistrate's determination that the attorney-client privilege applies to all of the documents in question is neither clearly erroneous nor contrary to law. *See* 28 U.S.C. § 636(b)(1)(A). In upholding the Magistrate's determination, the Court notes that the plaintiffs failed to refer to any specific errors in the Magistrate's thorough discussion of the relevant authorities. Accordingly, the Court finds it unnecessary to reiterate the principles on which the Magis-

trate relied or the conclusions he reached, beyond what the Court has already set out in the Background section of this opinion.

■ The central question on this motion is whether the voluntary disclosure of privileged material to the SEC for purposes of its nonpublic proceeding constitutes a waiver of the attorney-client privilege. And the key question on the waiver issue—as reflected in the voluminous papers submitted to the Court and in the course of oral argument—is whether *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596 (8th Cir. 1977), is properly distinguishable from the instant case. The Court concludes that it is not. The Court does not read the case so narrowly as Magistrate Raby or the plaintiffs.

In *Diversified,* the Eighth Circuit held en banc that the attorney-client privilege protected lawyers' interviews with certain corporate employees, a law firm report based on those interviews, as well as portions of corporate minutes and a letter from the corporation president that reflected the contents of the interviews. *Id.* at 611. The court of appeals then held that a voluntary surrender of privileged documents pursuant to an SEC subpoena in a separate and non-public investigation constituted only a limited waiver. Accordingly, the documents were not subject to disclosure in the private civil action before the court of appeals. In order to understand Magistrate Raby's and the plaintiffs' interpretation of these holdings, the background to *Diversified,* as stated in the *Diversified* opinions, must be set out.

Diversified Industries, Inc. ("Diversified") was engaged primarily in manufacturing and processing nonferrous metals, including copper. The Weatherhead Company ("Weatherhead"), a manufacturer and seller of brass and brass products, purchased from Diversified the copper Weatherhead used in producing brass. During a proxy fight in 1975–1976, it came to light that Diversified may have maintained a slush fund to bribe purchasing agents of Weatherhead to purchase inferior copper. The SEC became interested in the matter and conducted an official investigation of Diversified, other corporations and individuals. The agency later sued for an injunction. Subsequently, a consent decree was entered in that case.

Before any official SEC action was taken, however, the Diversified board of directors concluded that it should cause an investigation to be made of the corporation's business practices. In the spring of 1975 the board authorized the general counsel of the corporation to hire the Washington, D.C. law firm of Wilmer, Cutler & Pickering ("law firm") to conduct such an investigation. In June of 1975 the law firm submitted a memorandum setting forth historical matters and the procedures the law firm would use in conducting the inquiry. In December 1975 the law firm submitted a full and detailed report of the investigation. This report included, *inter alia,* the identities of persons interviewed, the substance of the interviews, and recommendations of the law firm. Although the minutes of the board of directors said little about those recommendations, the minutes of September 3, 1975—while the investigation was under way—reflected statements about the status of the investigation and some tentative findings. A letter dated January 30, 1976 from the president of Diversified to all corporate officers and heads of the company's subsidiaries and divisions revealed in part the results of the law firm's investigation.

In July 1975, soon after the law firm began its investigation, Weatherhead sued Diversified alleging: an unlawful conspiracy between Diversified and Weatherhead employees to bribe the latter; antitrust violations; and tortious interference with a contract. Weatherhead was able to get the documents described above—for which Diversified claimed the attorney-client privilege—only by making a motion before the district court. After granting the motion, the district court refused to reconsider its decision requiring disclosure and refused to certify the question for interlocutory appeal. Subsequently, the court affirmatively ordered disclosure.

Diversified then brought an original petition for a writ of mandamus directed at the

district court to protect certain documents. Weatherhead responded that neither the attorney-client privilege nor the work-product immunity applied and that any privilege, if it existed, was waived when Diversified turned over material to the SEC without protest in response to an agency subpoena. The Eighth Circuit panel that first addressed the writ held that the attorney-client privilege did not apply because the law firm was not hired to render legal services or advice. It held that the work-product immunity did not apply because the work was not prepared in anticipation of litigation. It also held that the board of directors minutes were not privileged. *Id.* at 603–04. Accordingly, it did not reach the waiver issue. The majority, however, labeled that issue "a serious one" and commented in a footnote:

> We would be reluctant to hold that voluntary surrender of privileged material to a governmental agency in obedience to an agency subpoena constitutes a waiver of the privilege for all purposes, including its use in subsequent private litigation in which the material is sought to be used against the party which yielded it to the agency.

*Id.* at 604 & n.1.

Judge Heaney, concurring and dissenting, was "convinced that Diversified did not waive its lawyer-client privilege by voluntarily surrendering privileged material to the SEC in obedience to a subpoena from that agency." *Id.* at 604. He disagreed with the majority's holding that the attorney-client privilege did not apply to the law firm's June memorandum and to its December report, as well as to the board minutes to the extent they contained excerpts from either. He concluded that extending the privilege to these kinds of situations "will encourage corporations to seek out wrongdoing in their own house and to do so with

lawyers who are not only professionally trained but who are obligated by their code of ethics to make a thorough and complete report." *Id.* at 606.

■ Most of the en banc opinion, which was written by Judge Heaney, addressed the question whether the attorney-client privilege applied in that particular corporate context. Particularly, the en banc court addressed whether it should apply the "control group" test formulated in *City of Philadelphia v. Westinghouse Electric Corp.,* 210 F.Supp. 483 (E.D.Pa.), *mandamus and prohibition denied sub nom. General Electric Co. v. Kirkpatrick,* 312 F.2d 742 (3d Cir. 1962), *cert. denied,* 372 U.S. 943, 83 S.Ct. 937, 9 L.Ed.2d 969 (1963), or the broader test of corporate privilege formulated in *Harper & Row, Inc. v. Decker,* 423 F.2d 487 (7th Cir. 1970), *aff'd by an equally divided Court,* 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971). The court adopted the *Harper & Row* test, as modified by Judge Jack B. Weinstein, see generally Weinstein & Berger, 2 *Weinstein's Evidence* ¶ 503(b)[04] (1979), and held that the communications and documents at issue satisfied the requirements established by that test.[1] *Diversified, supra,* 572 F.2d at 608–10. In particular, in determining that the communications were "made for the purpose of securing legal advice" for the corporation, the court stated that

> the application of the attorney-client privilege to this matter and others like it will encourage corporations to seek out and correct wrongdoing in their own house and to do so with attorneys who are obligated by the Code of Professional Responsibility to conduct the inquiry in an independent and ethical manner.

*Id.* at 610.

After concluding that the material sought was protected by the attorney-client privilege, the court continued:

1. Under the approach adopted by the Eighth Circuit, the attorney-client privilege is applicable to an employee's communication if (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents. *Diversified, supra,* 572 F.2d at 609.

We finally address the issue of whether Diversified waived its attorney-client privilege with respect to the privileged material by voluntarily surrendering it to the SEC pursuant to an agency subpoena. As Diversified disclosed these documents in a separate and nonpublic SEC investigation, we conclude that only a limited waiver of the privilege occurred. *See Bucks County Bank and Trust Company v. Storck,* 297 F.Supp. 1122 (D.Haw.1969). *Cf. United States v. Goodman,* 289 F.2d 256, 259 (4th Cir.), *vacated on other grounds,* 368 U.S. 14, 82 S.Ct. 127, 7 L.Ed.2d 75 (1961). To hold otherwise may have the effect of thwarting the developing procedure of corporations to employ independent outside counsel to investigate and advise them in order to protect stockholders, potential stockholders and customers.

*Id.* at 611. Judge Henley, concurring and dissenting, agreed that the voluntary disclosures to the SEC did not amount to a waiver. *Id.* at 611–12.

Magistrate Raby read the final sentence of the waiver quote set out above as a restriction on the court's holding that only a limited waiver had occurred. He read *Diversified* as restricted to "an investigation conducted by special counsel hired for the sole purpose of investigating allegations of impropriety and advising the corporation in order to protect shareholders." Memorandum and Order at 9. Throughout this proceeding, plaintiffs have relied on that purported distinction.

Magistrate Raby stated, in essence, the factual context in which the communications in *Diversified* arose, but the Court does not read that factual context as a restriction on the limited waiver principle enunciated in that case. The reasoning and language of the *Diversified* opinions do not support his view. The en banc court's statement of the waiver issue and its express holding, quoted above, do not impose such a restriction. While the en banc deci-

sion controls here, it should also be noted that the other *Diversified* opinions support this conclusion. Neither the dictum of the majority of the prior panel, *id.* at 604 n. 1, nor Judge Heaney's concurrence and dissent from that opinion, *id.* at 604, nor Judge Henley's concurrence and dissent from the en banc decision, *id.* at 611–12, suggest that a limited waiver can be found only where corporations have hired outside counsel to conduct such investigations. Rather, the concern in *Diversified* with promoting corporate housecleanings was expressed primarily in addressing the initial question of whether the attorney-client privilege applied at all in that corporate context, not in regard to whether the privilege was waived once it arose. Judge Heaney voiced that concern in his concurrence and dissent from the first panel's decision. He advocated extending the attorney-client privilege to situations like the one before the court because it would encourage corporations to hire lawyers to investigate alleged wrongdoing within the corporation. *Id.* at 606. In writing the majority decision for the en banc court, he again voiced that view. The en banc court stressed that consideration in determining whether the communications from corporate employees to the law firm were made for the purpose of securing legal advice for the corporation. *Id.* at 610. Judge Heaney did, however, repeat this concern in support of the court's holding that only a limited waiver occurred, as Magistrate Raby noted. Yet this Court would misplace the Eighth Circuit's attention to corporate housecleaning by granting it much weight, or letting it tip the scale, on the waiver issue.[2]

The cases cited by the Eighth Circuit in support of its finding only a limited waiver belie the Magistrate's restrictive reading of *Diversified.* In *Bucks County Bank and Trust Co. v. Storck,* 297 F.Supp. 1122 (D.Haw.1969), plaintiff moved against garnishees to compel answers to oral interrogatories. Plaintiff argued that the attorney-client privilege had been waived when the client testified in a prior case.

2. Plaintiffs suggest that *Diversified* is inapplicable because Donovan Leisure was counsel to IDS and special counsel to IDS Mortgage Corporation, rather than "independent outside counsel." This purported distinction is without merit.

Suffice it to say that testimony given by a client at a hearing, whereby the client defendant by motion seeks the return of property taken from him by an alleged illegal search and seizure, is given for the purpose of such motion, alone, and does not constitute a general waiver of privilege by the client defendant, and it is equally clear that such evidence is not usable against the defendant even in the criminal case in chief in connection with which a return of property or suppression of evidence is sought.

*Id.* at 1123. Plaintiffs in the case at bar note that *Bucks County Bank and Trust Co.* has been criticized. Memorandum in Opposition to Motion for Reconsideration at 28 n.*, *citing In re Penn Central Commercial Paper Litigation,* 61 F.R.D. 453, 462 n. 20 (S.D.N.Y.1973). The immediate question, however, is not whether *Bucks County Bank and Trust Co.* was properly decided under applicable law, but rather how the Eighth Circuit viewed that decision. There is no suggestion that the Eighth Circuit read the case as bearing on, or as restricted to, corporate housecleanings. Rather, the Eighth Circuit appears to have cited the case for the proposition that a waiver in a separate proceeding may be a waiver only as to that separate proceeding.

The Eighth Circuit suggested as analogous support *United States v. Goodman,* 289 F.2d 256, 259 (4th Cir.), *vacated on other grounds,* 368 U.S. 14, 82 S.Ct. 127, 7 L.Ed.2d 75 (1961). There the Fourth Circuit held that a prior disclosure to federal agents was not a waiver of the fifth amendment privilege as to the same subject matter in a subsequent proceeding. Whatever its level of support for the holding in *Diversified, Goodman* may not be read as restricting limited waivers to corporate housecleanings by outside counsel.

In *In re Grand Jury Subpoena Dated July 13, 1979,* 478 F.Supp. 368 (E.D.Wis.1979), the court relied on the Eighth Circuit's en banc decision in *Diversified* in finding only a limited waiver. The case did involve corporate housecleaning, but that context was not germane to the court's reasoning. The court granted in part and denied in part a motion to quash a grand jury subpoena. The United States Attorney had sought access to documents for grand jury proceedings from a law firm that had prepared the documents in connection with the firm's investigation into "questionable payments" by its clients. The court held that the attorney-client privilege had not been waived by turning them over to the SEC, the IRS, and a New York grand jury.

It is apparent that voluntary cooperation with the Securities and Exchange Commission or with an Internal Revenue Service or grand jury investigation would be substantially curtailed if such cooperation were deemed to be a waiver of a corporation's attorney-client privilege. I believe that such cooperation should be encouraged . . . .

*Id.* at 372–73. As a policy matter, the court sought to avoid curtailing such voluntary disclosures.

Magistrate Raby recognized that there is authority for the proposition that "strong policy considerations necessitate sustaining the privilege notwithstanding disclosure to a third party, where serious questions of fairness do not arise and where the party attacking the privilege has not been prejudiced by the disclosure." Memorandum and Order at 10. In *Diversified,* the Eighth Circuit, en banc, expressed its view that such policy consideration supported only a limited, rather than complete, waiver. The district court in *In re Grand Jury Subpoena Dated July 13, 1979* shared that view. Although this Court's task is to determine how the Eighth Circuit would view the question at bar, the Court agrees with the view that voluntary disclosures to agencies should be encouraged rather than requiring that agency requests or subpoenas be fought to the hilt.

Of course, a limited waiver may be inappropriate where unfairness would result to the party attacking the privilege. The concern for fundamental fairness underlies the principle that the privilege may be waived. 8 *Wigmore on Evidence* § 2327, at 635–36 (McNaughton rev. ed. 1961). This concern

has given rise to such metaphors as the privilege may not be used as both a shield and a sword, and, the client may not have his cake and eat it too. Magistrate Raby concluded that the privilege was being so used here—that the withheld documents would unfairly deprive plaintiffs of relevant facts. The plaintiffs have not established, however, how the disclosure to the SEC prejudiced them. The privileged information is not being used in the Minnesota litigation. The defendants in that litigation have represented to this Court that they will not rely on the defense of reliance on counsel. The only prejudice that appears to arise is the prejudice that results whenever a party is deprived of information it would rather have. Such prejudice is neither caused nor acerbated by the disclosure of privileged information to the SEC in a separate, nonpublic proceeding to which the plaintiffs were not a party.

Plaintiffs, apparently alleging unfairness, argue that the disclosure to the SEC was adversarial and "persuasive." The Court declines to speculate as to how the adversarial nature of disclosure *vel non* establishes prejudice to the plaintiffs in this separate proceeding or as to how the disclosure, if it was adversarial, was thereby less helpful to the SEC.

Plaintiffs rely *inter alia* on *In re Penn Central Commercial Paper Litigation, supra.* The Court is aware of that opinion by the able former Chief Judge Edelstein of this district and is aware of authority suggesting a result contrary to the one reached in this decision. For the reasons stated above, however, the Court believes that voluntary submissions to agencies in separate, private proceedings should be a waiver only as to that proceeding. More importantly, the Court again notes that the question is whether the Magistrate has properly construed Eighth Circuit authority. The Court concludes that his interpretation of *Diversified* is contrary to the principle of limited waiver enunciated in that decision.

### CONCLUSION

The Court granted the attorney witnesses' motion for reconsideration of the Magis-

trate's Memorandum and Order and allowed extensive briefing, filing of affidavits, and oral argument on the motion. The Court now affirms the Magistrate's Memorandum and Order to the extent that he found that the attorney-client privilege applies to the documents in question, but it reverses the Magistrate's decision that the attorney-client privilege was waived by the voluntary disclosure to the SEC in a separate, private proceeding to which the plaintiffs were not a party. Accordingly, the Court need not address questions as to the scope of the waiver or as to the claim of work-product immunity.

So ordered.