**Seymour SCHNELL, Plaintiff,**

v.

**M. Elliot SCHNALL, et al., Defendants.**

**No. 80 Civ. 2442 (GLG).**

United States District Court,
S.D. New York.

Nov. 15, 1982.

Kaufman, Taylor, Kimmel & Miller, New York City, for plaintiff; Roger Kirby, New York City, of counsel.

Berthold H. Hoeniger, P.C., New York City, for the Icahn defendants; Peter S. Schram, Berthold H. Hoeniger, New York City, of counsel.

Shereff, Friedman, Hoffman & Goodman, New York City, for defendant Saxon Industries, Inc.; Richard D. Weinberg, Joseph F. Donley, New York City, of counsel.

Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for defendant Harrison Steans; Bernard Nussbaum, Chicago, Ill., of counsel.

OPINION

GOETTEL, District Judge:

Saxon Industries, Inc. (Saxon) moves pursuant to 28 U.S.C. § 636(b)(1)(A) (1976) for

---

reconsideration of Magistrate Bernikow's ruling that (1) compelled Saxon to produce an unredacted transcript of the prior testimony of its attorney Robert Millstone before the Securities and Exchange Commission (SEC) and (2) directed Millstone to answer certain questions posed to him at his deposition taken in this action.

Magistrate Bernikow held that Saxon had waived the attorney-client privilege for purposes of the present action by reason of Millstone's previous testimony before the SEC. For the reasons set forth below, we hold that Saxon did not waive the attorney-client privilege.[1]

*Background*

This is an action for violations of Sections 10(b) and 13(d) of the Securities Exchange Act of 1934, numerous sections of the Investment Advisers Act of 1940, and breach of common law fiduciary duties. The plaintiff Seymour Schnell, suing on his own behalf and derivatively on behalf of Saxon, alleges, *inter alia,* that the Icahn defendants (Icahn)[2] acquired more than five percent of Saxon's stock and then made material misstatements and omissions in 13D Schedules filed with the SEC.[3] In particular, he alleges that Icahn misrepresented its purpose in acquiring the stock as "investment" and failed to state that Icahn's true purpose in acquiring the stock was to pressure Saxon management to purchase Icahn's shares (at a quick profit to Icahn) under the threat of a proxy fight.[4]

Icahn's purchase and sale of Saxon stock prompted an investigation by the SEC.

During the course of the investigation, Saxon's then general counsel, Baskin and Sears, was served with a subpoena requiring Robert Millstone, a partner in the firm, to testify before the SEC. (Millstone had represented Saxon in connection with matters underlying the present lawsuit.) In December 1980, Millstone testified before the SEC regarding, *inter alia,* communications between Millstone and his client Saxon and various meetings concerning the sale and purchase of Saxon stock. The record indicates that Millstone did not assert the attorney-client privilege when he testified before the SEC and that no one from Saxon itself was present at the time of Millstone's testimony.

During the course of discovery in this action, Icahn served a notice and subpoena to take the deposition of Millstone on March 11, 1982. At the deposition, Millstone refused, because of the attorney-client privilege, to answer certain questions about the Saxon/Icahn matter, even though he had previously testified about these matters before the SEC. Following the March 11 deposition of Millstone, Icahn sought to obtain a copy of the transcript of his prior testimony before the SEC. Upon receipt of the transcript, Millstone turned it over to Saxon's present litigation counsel, who redacted portions of the transcript on the ground of attorney-client privilege and then gave the redacted transcript to Icahn's counsel. Icahn then moved before Magistrate Bernikow to compel Saxon to produce the unredacted transcript and to require

---

1. The only issue addressed in this motion is whether Saxon waived the attorney-client privilege by reason of Millstone's testimony before the SEC. The Court is not deciding whether the redacted portion of the SEC transcript is in fact protected by the attorney-client privilege. Indeed, it appears that most of this material is not privileged.

   Additionally, at oral argument before Magistrate Bernikow, counsel suggested that a similar problem may arise regarding the testimony of Walter Feldesman, general counsel and director of Saxon. The Court is not ruling on whether Feldesman's SEC transcript should be produced because neither the transcript nor the circumstances of Feldesman's testimony are before us.

2. "Icahn" includes all the defendants in this action except the nominal defendant Saxon Industries, Inc., and the defendant Harrison I. Steans. Only the Icahn defendants are seeking disclosure of Millstone's prior testimony before the SEC.

3. Section 13(d) of the Securities Exchange Act of 1934 requires any person or group that acquires more than five percent of the stock of any company registered under § 12 of the Exchange Act to file a 13D Schedule.

4. Icahn has filed a third-party complaint against eleven directors of Saxon for contribution. The third-party defendants' motion to dismiss the third-party complaint is now pending before this Court.

Millstone to respond to the questions unanswered at his deposition. We are now asked to reconsider Magistrate Bernikow's ruling that compelled disclosure.

*Discussion*

The Second Circuit Court of Appeals has not yet decided whether prior voluntary disclosure to the SEC constitutes a waiver of the attorney-client privilege for purposes of subsequent litigation. (Although the Icahn defendants contend that the law of the Circuit can be established from a few district court opinions on the point, we know of no authority for this proposition.) The existing case law from other courts appears to fall into three categories.

One line of cases holds that a party's prior voluntary disclosure to the SEC does not constitute a waiver of the attorney-client privilege in subsequent litigation. *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596 (8th Cir.1978) (*en banc*); *Byrnes v. IDS Realty Trust,* 85 F.R.D. 679 (S.D.N.Y. 1980); *In re Grand Jury Subpoena Dated July 13, 1979,* 478 F.Supp. 368 (E.D.Wis. 1979). These courts predicated their decisions on the overriding public policy of encouraging full disclosure to the SEC. The courts reasoned that an absolute waiver of the attorney-client privilege would discourage full disclosure to the SEC for fear that the information, although otherwise privileged, could be used in subsequent litigation. As Judge Tenney noted in *Byrnes,*

> "[i]t is apparent that voluntary cooperation with the Securities and Exchange Commission or with an Internal Revenue Service or grand jury investigation would be substantially curtailed if such cooperation were deemed to be a waiver of a corporation's attorney-client privilege." ... [Such cooperation] should be encouraged rather than requiring that agency requests or subpoenas be fought to the hilt.[5]

*Byrnes v. IDS Realty Trust, supra,* 85 F.R.D. at 688 (quoting *In re Grand Jury Subpoena Dated July 13, 1979, supra,* 478 F.Supp. at 372–73).

By contrast, a second line of cases holds that a party's previous voluntary testimony before the SEC constitutes a waiver of the attorney-client privilege. *In re Sealed Case,* 676 F.2d 793 (D.C.Cir.1982); *Permian Corp. v. United States,* 665 F.2d 1214 (D.C. Cir.1981); *In re Weiss,* 596 F.2d 1185 (4th Cir.1979); *In re Penn Central Commercial Paper Litigation,* 61 F.R.D. 453 (S.D.N.Y. 1973).

Three of these cases, however, arose in factual contexts different from the present case. *In re Sealed Case* and *In re Weiss,* for example, arose in the context of grand jury proceedings as opposed to civil litigation. The courts in both cases stressed that the public interest in finding a waiver of the privilege is greater when the waiver will result in disclosure to a grand jury than when waiver will result in disclosure to a civil litigant. *In re Sealed Case, supra,* 676 F.2d at 823; *In re Weiss, supra,* 596 F.2d at 1186. *Permian Corp. v. United States* arose in an administrative context. In finding a waiver of the privilege, the court in *Permian* granted the United States Department of Energy access to documents that a corporation had previously disclosed to the SEC. The court stated that it was "aware of no Congressional directive or judicially-recognized priority system that places a higher value on cooperation with the SEC than on cooperation with other regulatory agencies, including the Department of Energy." 665 F.2d at 1221. The court's decision was apparently influenced by the facts that the party seeking disclosure was another regulatory agency, also a part of the United States Government, and that, as between the corporation and the government, there had already been a waiver.

---

**5.** Notably, the public policy concerns of these courts were recently addressed at the August 1982 Annual Meeting of the American Bar Association. At that meeting, John M. Fedders, Director of the SEC's Division of Enforcement, noted that uncertainty about the waiver issue had already impeded SEC investigations as well as the SEC's voluntary disclosure program. Mr. Fedders urged legislation "specifying that production of privileged materials to the Commission's staff does not constitute a waiver of the privilege." *Roundtable: Attorney-Client Privilege In SEC Investigations,* Speech by John M. Fedders of the SEC, [Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 83,242, at 85,254 (Aug. 8, 1982).

A third alternative, representing a midpoint between the no waiver and absolute waiver approaches, may be found in *Teachers Insurance and Annuity Association of America v. Shamrock Broadcasting Co.,* 521 F.Supp. 638 (S.D.N.Y.1981). In that civil case, the defendant moved to compel production of documents that the plaintiff-corporation had previously disclosed to the SEC. Judge Conner held that "disclosure to the SEC should be deemed to be a complete waiver of the attorney-client privilege *unless the right to assert the privilege in subsequent litigation is specifically reserved at the time the disclosure is made.*" *Id.* at 644–45 (emphasis added). He reasoned that an assertion of the privilege at the time of disclosure by stipulation or protective order, "would [not] substantially curtail the investigatory ability of the SEC," *id.* at 646, and that such a stipulation or protective order would indicate that "the disclosing party has made some effort to preserve the privacy of the privileged communication." *Id.* at 646.

In the opinion of this Court, the public policy considerations cited by Judge Tenney in *Byrnes* are paramount. In addition, the approach of *Teachers Insurance* protects the rights of private litigants without compromising the policy of encouraging disclosure to the SEC. Although we agree with the approach in *Teachers Insurance,* the facts in that case are different from those here. In *Teachers Insurance,* the *client* made the decision to disclose the information to the SEC. In the present case, the record does not indicate that Saxon was present at the time of its attorney Millstone's testimony before the SEC. Nor does the record indicate that Saxon authorized the waiver of any alleged privilege by way of Millstone's testimony.[6] *See Republic Gear Co. v. Borg-Warner Corp.,* 381 F.2d 551, 556 (2d Cir.1967) ("[A]n attorney can neither invoke the privilege for his own benefit when his client desires to waive it nor waive the privilege without his client's consent to the waiver.") As the privilege belongs to Saxon, not to its attorney Millstone, we cannot hold that Saxon waived the privilege by the mere fact of its attorney's testimony.[7] Moreover, the privilege has to be asserted, on a question by question basis, when applicable. It is, therefore, difficult to have a corporate reservation of rights asserted at the time each disclosure is made.

For the reasons stated above, Saxon Industries did not waive the attorney-client privilege by reason of its attorney Millstone's prior testimony before the SEC. Accordingly, the ruling of Magistrate Bernikow is reversed and the matter is referred to Magistrate Bernikow to determine to what extent the testimony at issue is in fact privileged.

So ordered.

---

**6.** Although Saxon's chairman and president Stanley Lurie had previously testified before the SEC, the transcript of his testimony is not before us. We cannot therefore determine the extent to which Lurie and Millstone's testimony are duplicative so as to implicitly act as a waiver of the attorney-client privilege.

**7.** It should be noted that the case of *In re Penn Central Commercial Paper Litigation, supra,* is also distinguishable on the ground that the *client* in that case made the decision to disclose information to the SEC.