### IN RE WORLDS OF WONDER SECURITIES LITIGATION.

### No. C–87–5491 SC(FSL).

United States District Court,
N.D. California.

Sept. 28, 1992.

See also 147 F.R.D. 214.

Alan Plutzik, and Steven Sherman, of the Law Offices of David B. Gold, San Francisco, CA, for plaintiffs.

Marta Cervantes, of the law firm of Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for defendants, the former corporate officers of Worlds of Wonder.

## ORDER RE DISCOVERY

LANGFORD, United States Magistrate Judge.

Defendants' Motion for Protective Order and for an Order Quashing Document Subpoena came on for hearing on September 25, 1992. The matter having been fully considered and good cause appearing,

IT IS HEREBY ORDERED that the motion is denied. The documents on file with the Securities and Exchange Commission shall be produced.

## BACKGROUND

Worlds of Wonder (WOW) was a high-technology toy company based in Fremont, California. WOW's best known products were Teddy Ruxpin, an animated story-tell-

ing plush bear, and Lazer Tag, a game using infrared technology. WOW became a publicly-held company when it issued common stock in an initial public offering in June 1986. WOW also sold $80 million in debentures in June 1987. WOW was immensely successful in 1985 and 1986 but faltered along with the entire toy industry in 1987. WOW filed for protection under the Federal Bankruptcy Laws in December 1987.

Plaintiffs have brought a securities class action lawsuit alleging that defendants made false and misleading statements concerning WOW during the period June 1986 through December 1987.

## THIS MOTION

The Officers of the Corporation, named defendants in this case, move the court for a protective order quashing document subpoenas issued by plaintiffs to the Securities and Exchange Commission for documents contained in a file it opened while conducting an informal investigation of Worlds of Wonder.

## STANDING

Federal Rule of Civil Procedure 26(c) gives the court the power to limit the scope of permissible discovery. The rule provides that:

> Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense ...

The officer-defendants claim that, as parties, they have a right to request that the court limit the scope of discovery.

The Officer–Defendants also claim that they have standing to object to production of documents by the SEC because a letter dated January 7, 1991 from Worlds of Wonder and an order dated May 9, 1991 by the Bankruptcy Court gave the officer-defendants the right to assert any and all privileges regarding the company's documents.

■ Plaintiffs reject both these claims. They say that the subpoena was not ad-

dressed to the officer-defendants, but to the SEC. There is also no evidence that the officer-defendants ever produced any documents to the SEC. The parties who produced the documents—WOW, Deloitte, Bear Stearns, WOW's Houston venture capitalists and others have not objected to the production of documents by the SEC. Neither has the SEC.

Plaintiffs also reject the claim that the officer-defendants have the right to assert any privilege held by WOW with respect to the documents in the SEC file. The January 7, 1991 letter to which the defendants refer provides only that WOW and its successor in interest, Toy Liquidating Company (TLC), will turn over certain WOW documents to the officer-defendants' lawyers for storage. It does not purport to give the officer-defendants any right to assert privileges on behalf of WOW or TLC. Moreover, that letter agreement refers only to the specific documents turned over in 1991—some of which may or may not be in the SEC file. The text of the letter clearly shows that WOW and TLC turned over the documents to the Wilson Sonsini law firm strictly for their use in this litigation. There is no ownership transfer. Indeed, the documents are to be returned at the conclusion of the litigation. There is no transfer of any interest or confidentiality rights held by WOW or TLC to the defendants.

The Bankruptcy Court order only limits the production of WOW documents but does not give any specific rights to the officer defendants with respect to those documents.

This court concludes that the officer-defendants do not have standing to assert a claim of privilege for documents which they did not necessarily produce or control at the time they were submitted to the SEC. The court further finds that the letter of January, 1991 and the Bankruptcy Court order of May, 1991 do not confer any such right on the officer-defendants.

## WORK PRODUCT DOCTRINE

■ When an attorney selects certain documents to respond to an inquiry, that selection may reveal the attorney's thought processes and the identity of the documents may

be privileged under the work product doctrine. *See Jaroslawicz v. Engelhard Corp.,* 115 F.R.D. 515, 517 (D.N.J.1987).

■ The work product privilege may only be waived by disclosure to an *adversary* in litigation, not to any third person. *Shields v. Sturm, Ruger & Co.,* 864 F.2d 379, 382 (5th Cir.1989). Unlike the attorney-client privilege, "the mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege," *citing* 8 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 2024, at 210 (1970).

The Third Circuit, in *Westinghouse Elec. Corp. v. Republic of the Philippines,* 951 F.2d 1414 (3rd Cir.1991), held that the production of documents to the SEC during an investigation constituted a waiver of the work product protection because the SEC was an "adversary" of the corporation. However, in *Westinghouse,* the defendant corporation in that case was the subject of a formal investigation by the SEC and a separate investigation by the Department of Justice. In fact, Westinghouse and one of its associates, Disini, had produced the documents in response to subpoenas. In *Westinghouse,* there was a plausible basis for the court's conclusion that the SEC was an adversary and that Westinghouse has submitted 'the information to the SEC in order to obtain lenient treatment. Here, WOW was not a target of a formal investigation.

Defendants claim that their counsel took every available precaution against disclosure of the documents and the information contained in them to plaintiffs in the securities action (which was already pending at the time of the inquiry). The Company expressly reserved all its rights, submitted the information confidentially, and requested confidential treatment from the SEC's Freedom of Information Act officer.

Defendants request that the court not permit plaintiffs to use the "back door" and obtain defendants' work product from the SEC.

Of course, plaintiffs reject defendants' arguments.

With respect to the theory that the selection of the documents reveals the attorney's mental processes, plaintiffs rejoin that if that theory were correct, any filing with, or production of documents to, a public agency or entity would constitute protectable work product. This is not the law.

Plaintiffs say that these documents were not prepared or produced "in anticipation of litigation," a crucial factor in applying the work product doctrine. In fact, these documents were produced in an attempt to forestall an enforcement action by the SEC, to convince the SEC that there was nothing wrong with WOW.

## WAIVER

■ Waiver of work product to the SEC also waives work product to others. *In re Sealed Case,* 676 F.2d 793, 817 (D.C.Cir. 1982). The court held that waiver of work product to the SEC also waived work product to the grand jury noting:

> The lawyer's work product privilege was conceived by lawyers who succeeded in having lawyers-become-judges accept the idea. The basis for that acceptance was that honesty, full disclosure, and fair dealings are indispensable to justice, our judicial system—an adversarial system in most instances—should function more effectively where the work product of the lawyer is protected from unnecessary disclosure. But here the agreement to cooperate with the SEC in determining the facts was intended to alter the adversary relationship. Together the parties were to seek the truth. Certainly, in such circumstances, where lawyer and client attempt to manipulate the work product privilege as Company and its counsel have done in this case, the cause of justice compels disclosure, and a waiver is implied.

*Id.* at 824–825.

The court in *Westinghouse* agreed that the purpose of the work product doctrine required it to distinguish between disclosures to adversaries and disclosures to non-adversaries. The court also found that a corporation which was the target of an investigation was an adversary of the investigating agency. 951 F.2d at 1428. Therefore, the work product doctrine was waived as to all other adver-

saries, even when the first adversary agreed not to disclose the protected documents. *Id.*

In its conclusion, the court held that a corporation's disclosure of work product to the SEC waived the work product doctrine as against all other adversaries. *Id.* at 1429.

■ This court rejects defendants' contention that there is a significant difference between the effect of producing documents to a government agency as part of an informal investigation, and production of documents as part of a formal investigation. The issue here is whether voluntary disclosure waives privilege. Disclosure as part of an informal investigation is more voluntary, if that is possible, than disclosure in response to subpoena, as in *Westinghouse.* The court in that case found that disclosure waived privilege.

Plaintiffs conclude that the work product immunity has been waived. So does this Court. The officer-defendants may not pick and choose to which adversaries they will reveal documents.

## PLAINTIFFS' NEED FOR THE DOCUMENTS

■ Although the attorney work-product privilege affords special protection to the attorney's mental impressions and opinions, a court may order production of protected materials upon an adverse party's showing of substantial need or inability to obtain the equivalent without undue hardship. *Admiral Insurance Company v. U.S. District Court for the District of Arizona,* 881 F.2d 1486, 1495 (9th Cir.1989).

■ Plaintiffs have been unable to obtain the Bear Stearns documents and numerous important WOW documents elsewhere. Also, many witnesses, including many of the former Worlds of Wonder employees represented by the Wilson Sonsini firm and its co-counsel, have professed lack of recollection of the events underlying the lawsuit. These documents are essential to complete plaintiffs' discovery.

Plaintiffs have a compelling need for documents produced to the SEC, including WOW's counsel's submissions to the agency.

These documents contain *contemporaneous* information relating to defendants' conduct.

Plaintiffs argue that even if there is a privilege protecting these documents, they should be produced because plaintiffs have a substantial need for them.

This court finds that it is a plausible argument that the defendants may have been more willing to produce documents to the SEC than to plaintiffs and that obtaining these documents from the SEC may be the only way plaintiffs may obtain them. Plaintiffs' need for the documents would also justify their production.

## SEC STATUTORY OBLIGATION TO DISCLOSE

■ According to the provisions of 5 U.S.C. § 552(b)(7)(A) the SEC is obligated to furnish its records to the public. Furthermore, even if defendants placed reliance upon the SEC rules regarding confidentiality, this would not create a reasonable expectation of confidentiality. *In re Subpoenas Duces Tecum,* 738 F.2d 1367, 1372 (D.C.Cir. 1984). The court held that it was contrary to public policy to allow a party to in effect "shelter" documents from an adversary by producing them voluntarily to the SEC:

"[f]airness and consistency require that appellants not be allowed to gain the substantial advantages accruing to voluntary disclosure of work product to one adversary—the SEC—while being able to maintain another advantage inherent in protecting that same work product from other adversaries. We are convinced that the health of the adversary system—which spawned the need for protection of an attorney's work product from discovery by an opponent—would not be well served by allowing appellants the advantages of selective disclosure to particular adversaries, a different disclosure often spurred by considerations of self interest. When a corporation elects to participate in a voluntary disclosure program like the SEC's, it necessarily decides that the benefits of participation outweigh the benefits of confidentiality for all files necessary to a full evaluation of its disclosures. It forgoes some of the traditional protections of the adversary

system in order to avoid some of the traditional burdens that accompany adversary resolutions of disputes, especially disputes with such formidable adversaries as the SEC.

[The party claiming protection under the work product doctrine] independently and voluntarily chose to participate in a thorough disclosure program, in return for which it received the *quid pro quo* of lenient punishment for any wrongdoings exposed in the process. That decision was obviously motivated by self-interest. Appellants now want work product protection for those same disclosures against different adversaries in suits centering on the very same matters disclosed to the SEC ... It would also be inconsistent and unfair to allow appellants to select according to their own self-interest to which adversaries they will allow access to the materials.

*In re Subpoenas Duces Tecum,* 738 F.2d at 1372 (citations omitted).

This court agrees that the SEC is obligated to produce the documents to plaintiffs. In fact, the SEC has not objected to the subpoena.

### PUBLIC POLICY

Defendants urge the court to find that public policy shields documents produced in response to a SEC informal inquiry. They say that when a company cooperates voluntarily it saves the SEC the expense and contentiousness of conducting a formal investigation. Companies and their counsel would be less likely to cooperate if they feared that private plaintiffs would have access to the "fruits" of their cooperation.

The court in *Byrnes v. IDS Realty Trust,* 85 F.R.D. 679, 688 (S.D.N.Y.1980), reversed a magistrate's order allowing private securities plaintiffs to obtain a report sent to the SEC by the corporation's outside counsel in response to an informal investigation. The court held that: "voluntary disclosures to agencies should be encouraged rather than requiring that agency requests or subpoenas be fought to the hilt." *Accord, Schnell v. Schnall,* 550 F.Supp. 650, 653 (S.D.N.Y.1982) ("In the opinion of this court, the public

policy considerations cited by Judge Tenney in *Byrnes* are paramount."); *Teachers Ins. & Annuity Ass'n. of America v. Shamrock Broadcasting Co.,* 521 F.Supp. 638, 646 (S.D.N.Y.1981) (corporations should be encouraged to cooperate with SEC informal inquiries by allowing them to submit documents under a confidentiality stipulation that preserves all privileges in the documents).

■ These cases have all been superseded by the comprehensive decision in the *Westinghouse* case, discussed above. This court agrees that there is no need to encourage corporations to cooperate with agencies' investigations, since it is in the corporations' best interests to do so, in order to forestall enforcement actions by the agencies. The *Westinghouse* court also held that the agency's confidentiality agreement does not shelter privileged documents from other adversaries of the corporation, if those documents have been disclosed to the agency.

■ Defendants also cite a line of cases supporting protection for documents related to a corporation's self-critical evaluation. They argue that federal courts have recognized this common law privilege by blocking discovery of reports containing critical self-evaluative material which have been submitted by corporations in response to mandatory government reporting requirements.

Defendants present no evidence that these documents are within the scope of the documents which this policy seeks to protect. Ordinary business reports and financial documents are not specially sheltered from disclosure. Defendants' interests are not the same interests that such a public policy would be intended to protect. Public policy does not give defendants the right to prevent the SEC from producing these documents to plaintiffs.

### CONCLUSION

This court concludes that the officer defendants do not have standing to assert a claim of privilege for documents submitted by WOW or TLC to the SEC.

Assuming *arguendo* that they did have standing, they have waived any privilege by submitting the documents to the SEC.

Plaintiffs have shown a compelling need for the documents and there is no public policy which would require that they be kept confidential.

Accordingly, the motion for protective order to quash document subpoenas issued to the SEC is *denied.* The documents on file with the Securities and Exchange Commission shall be produced.

### END NOTE

This court is aware of the decision of Magistrate Judge Infante in the case of *In Re Digital Microwave Securities Litigation,* C-90-20241 JW (N.D.Cal. Feb. 25, 1992), presently on appeal to the U.S. Court of Appeals for the Ninth Circuit. This court declines to stay its decision on this motion pending the outcome of that appeal.