**Serge H. ETIENNE, Plaintiff,**

v.

**MITRE CORPORATION, Defendant.**

**Civ. A. No. 92–1585–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 22, 1993.

---

**3.** The court ultimately chose to postpone the hearing on the Rule 11 matter until January 22, 1993.

Bernard DiMuro, DiMuro Ginsberg & Lieberman, Alexandria, VA, Joseph A. Artabane, Elliott, Vanaskie & Riley, Washington, DC, for plaintiff.

Ann Mac–Cox, McGuire, Woods, Battle & Boothe, McLean, VA, for defendant.

## MEMORANDUM OPINION & ORDER

BRINKEMA, United States Magistrate Judge.

This age discrimination lawsuit pits a former employee against his former employer, The Mitre Corporation ("Mitre"). Presently before the Court is plaintiff's motion to compel documents which contain data and studies compiled by defendant regarding its compliance with equal employment opportunity laws. Defendant claims that these documents are protected from being discovered by the self-critical analysis privilege.[1] The salary and promotion reviews, some of which were performed by an outside consultant, contain impact ratio analyses which were conducted to determine if any protected groups, including persons over the age of 40, were adversely affected during the period 1989–92. Comparisons of ladder level distributions were made on the basis of race, gender, ethnicity and age.

As a government contractor, Mitre is subject to the equal employment opportunity audits conducted by the Office of Federal Contract Compliance Programs ("OFCCP"). The impact ratio analysis methodology used in defendant's studies is, therefore, the same as that which is used by the OFCCP in the course of its audits.

Pursuant to this Court's Order of February 5, 1993, the undersigned has conducted an *in camera* review of the documents sought by plaintiff which defendant claims are protected from being discovered by the self-critical analysis privilege. For the reasons that follow, the Court finds that these documents are not protected by the self-critical analysis privilege.

### I. *The Self–Critical Analysis Privilege*

Federal Rule of Evidence 501 generally leaves the area of privilege to the trial court's discretion.[2] In enacting Rule 501, Congress clearly rejected the creation of specific privileges in favor of providing the

---

1. Defendant argues that document nos. P.992–P.993 are protected by both the self-critical analysis privilege as well as the work product doctrine. Following a review of these documents, the Court finds that they are not protected by the work product doctrine.

2. Rule 501, the single rule governing privilege, provides in pertinent part:
   Except as otherwise provided by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, state, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience ...
   Fed.R.Evid. 501.

courts with greater flexibility. *See, Trammel v. United States*, 445 U.S. 40, 47, 100 S.Ct. 906, 910, 63 L.Ed.2d 186 (1980) (stating that Rule 501 provides for development of privilege law on a "case-by-case basis"); S.Rep. No. 1277, 93rd Cong., 2nd Sess. 11 (1974), reprinted in 1974 U.S.C.C.A.N. 7051, 7059 ("[T]he recognition of a privilege based on a confidential relationship and other privileges should be determined on a case-by-case basis.")

The self-critical analysis privilege was first recognized in *Bredice v. Doctor's Hospital, Inc.*, 50 F.R.D. 249 (D.D.C.1970), *aff'd mem.*, 479 F.2d 920 (D.C.Cir.1973) when the court held that a decedent's administratrix in a medical malpractice suit could not obtain discovery of the minutes and reports of a hospital staff review meeting. The court stressed that the confidentiality of the medical staff's evaluation of potential improvements in its procedures and treatments was so essential to the self-review process that allowing discovery would chill the candor required for an effective internal review. *Id.* at 250. In particular, the court recognized that the long-term public benefits of improved health care outweighed the needs of the litigant seeking discovery, and, thus, should not be sacrificed without a showing of good cause. *Id.* at 251.

Since *Bredice*, the privilege has remained "largely undefined and not generally recognized by many authorities." *Guardian Life Insurance Co. v. Service Corp. Int'l*, 1989 WL 3496, at *3 (E.D.Pa. Jan. 17, 1989). The privilege is generally invoked when a litigant attempts to discover committee or peer review reports in academic or medical settings,[3] corporate internal investigation documents,[4] and affirmative action documents voluntarily recorded in compliance with federal equal employment opportunity statutes.[5]

■ Although no court has expressly defined the self-critical analysis privilege, most courts have recognized three criteria which must be met in order for the privilege to apply. First, the information contained in the document must result from an internal investigation or review conducted to evaluate or improve a party's procedures or products; second, the party must originally have intended that the information remain confidential and demonstrate "a strong interest in preserving the free flow of the type of information sought"; finally, the information contained in the documents "must be of a type whose flow would be curtailed if discovery were allowed." *Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423, 426 (9th Cir.1992) (quoting Note, *The Privilege of Self–Critical Analysis*, 96 Harv.L.Rev. 1083, 1086 (1983)); *See* S. Kay McNab, *Criticizing the Self–Criticism Privilege*, 1987 U.Ill.L.Rev. 675 (1987).

The third criterion typically requires the court to weigh the public interest served in preventing disclosure of confidential internal reviews against a plaintiff's need for the material to prove its case. Over the years, this balancing of public and private interests has become the essential consideration when a court decides whether the privilege should prevent disclosure of relevant information.[6] Essentially, the court must determine whether the type of inter-

---

3. *See, e.g., EEOC v. University of Notre Dame Du Lac*, 715 F.2d 331, 332–34 (7th Cir.1983); *Gray v. Board of Higher Educ.*, 692 F.2d 901, 902–09 (2nd Cir.1982).

4. *See, e.g., Federal Trade Comm'n v. TRW, Inc.*, 628 F.2d 207, 210 (D.C.Cir.1980); *Westmoreland v. CBS, Inc.*, 97 F.R.D. 703, 706 (S.D.N.Y.1983); *Lloyd v. Cessna Aircraft Co.*, 74 F.R.D. 518, 521 (E.D.Tenn.1977).

5. *See, e.g., O'Connor v. Chrysler Corp.*, 86 F.R.D. 211, 213 (D.Mass.1980); *Rosario v. New York Times Co.*, 84 F.R.D. 626, 631 (S.D.N.Y.1979).

6. *See, e.g., Myers v. Uniroyal Chemical Co., Inc.*, 1992 WL 97822, 1992 U.S.Dist. LEXIS 6472

(E.D.Pa. May 5, 1992) (privilege held inapplicable to internal accident investigation reports which companies have "considerable incentive" to compile in order to prevent recurring accidents and potential liability); *Wei v. Bodner*, 127 F.R.D. 91 (D.N.J.1989) (special need of litigant outweighs employer's interest in medical review committee context); *Hardy v. New York News, Inc.*, 114 F.R.D. 633 (S.D.N.Y.1987) (despite potential deterrence of socially useful investigations, plaintiff's interest in gathering information outweighs any interest of employer in discrimination suit).

nal review conducted by the party invoking the privilege is one that benefits the public interest and would be curtailed in the future if it were subject to disclosure during civil discovery.

In employment discrimination cases, most courts have held that affirmative action plans and equal employment opportunity reports compiled pursuant to the requirements of Title VII are not protected by the self-critical analysis privilege. *See Reynolds Metals Co. v. Rumsfeld,* 564 F.2d 663, 667 (4th Cir.1977), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 84 (1978); *In re Burlington Northern, Inc,* 679 F.2d 762 (8th Cir.1982). Because such reports and studies are produced involuntarily, there is no reasonable expectation by the employer that such material will remain confidential. Moreover, because of equal employment opportunity laws, which have obvious benefits to the public, such self-evaluations will hardly be curtailed in the future since they are mandated by law.

In the Fourth Circuit, where no court has yet to apply the privilege to prevent disclosure of documents during discovery,[7] the self-critical analysis privilege was most recently held inapplicable to affirmative action reports in a race discrimination suit. *Witten v. A.H. Smith & Co.,* 100 F.R.D. 446 (D.Md.1984), *aff'd mem.,* 785 F.2d 306 (4th Cir.1986). In that case, the district court specifically determined that the future accuracy of such reports would not suffer from disclosure when they are compiled in accordance with federal equal employment opportunity laws. *Id.* at 452.

## II. *Defendant Mitre Corp.'s Privilege Claim*

■ In the present employment discrimination suit, plaintiff has requested, *inter alia,* documents relating to any internal investigations or reviews conducted by defendant regarding its compliance with the Age Discrimination in Employment Act (ADEA). Defendant claims that these documents are protected from disclosure un-

der the self-critical analysis privilege. Defendant argues that these internal reports and studies were compiled for the purpose of evaluating and improving its employment policies and with the intent that they remain confidential. Moreover, defendant maintains that disclosure of these confidential documents would inhibit its ability to conduct frank and honest internal employment policy reviews in the future. While sensitive to defendant's position, the Court is not persuaded by these arguments.

Unlike hospital and academic peer review settings, where the confidential nature of the internal review is essential to allow hospitals and schools to improve their procedures, there is no confidential relationship to protect in this case. In fact, at least a portion of the studies were conducted by an outside consultant and the documents do not appear to reveal any confidential communications by Mitre employees that may be compromised by disclosure. More importantly, there is no evidence that disclosure of these relevant documents would impair defendant's ability or incentive to conduct similar employment policy reviews in the future. As at least one court has persuasively observed, business self-review would continue even in the absence of an evidentiary privilege because of the need to remain competitive. *Williams v. Vulcan–Hart Corp.,* 136 F.R.D. 457, 459 (W.D.Ky.1991).

The Court is further persuaded by the strong public interest in allowing disclosure of these relevant documents in the context of a private employment discrimination suit. It is well established that broad discovery is favored under the Federal Rules of Civil Procedure. In fact, exclusionary rules and privileges contravene the fundamental principle that "the public ... has a right to every man's evidence." *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950). This public right of broad discovery is especially strong in private discrimination suits. Indi-

---

**7.** Although the Fourth Circuit has upheld a trial court's refusal to require production of confidential faculty member evaluations in a discrimination suit, it did so without mention of the self-critical analysis privilege. *Keyes v. Lenoir Rhyne College,* 552 F.2d 579 (4th Cir.), *cert. denied,* 434 U.S. 904, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977).

vidual plaintiffs bring employment discrimination suits on behalf of themselves and the public in an effort to eradicate discriminatory practices of private employers prohibited under federal law. Application of the self-critical analysis privilege in cases such as this would, therefore, contravene the public interest which is at stake.

For the foregoing reasons, the Court finds that the self-critical analysis privilege does not apply to the documents submitted by defendant for *in camera* review. Plaintiff's Motion to Compel is, therefore, GRANTED as to documents which are relevant to plaintiff's age discrimination claim.[8] It is hereby

ORDERED that defendant produce these relevant documents forthwith.

The Clerk is directed to forward copies of this memorandum opinion and order to counsel of record and to return the documents submitted for *in camera* review to defendant.

---

**8.** Many of these documents are statistical tables which analyze defendant's employees by race, ethnicity and gender as well as age. Because only age is a factor in this case, defendant may redact from the documents any data that does not pertain to age. Such redaction, however, may not delay the production of these documents. Moreover, document nos. P.256–P.389 appear to be studies which are limited only to evaluations of race and gender issues. Defendant does not need to produce any of these documents unless references to age are included. Defendant may redact the non-age data from these documents as well.