896 F.Supp. 540 (1995)
Dorothy Hammond WARREN, Plaintiff,
v.
LEGG MASON WOOD WALKER, INC. and Arnold M. Peskin, Defendants.
No. 3:94-CIV-15-BR-2.
United States District Court, E.D. North Carolina, Western Division.
February 2, 1995.
*541 J. Anthony Penry, Wyrick, Robbins, Yates & Ponton, Raleigh, NC, for plaintiff.
Robert H. Tiller, Parker, Poe, Adams & Bernstein, Raleigh, NC, for defendants.

ORDER
BRITT, District Judge.
This matter is before the court on an appeal from a ruling on plaintiff's motion to compel issued by United States Magistrate Judge Alexander B. Denson on 19 December 1990. Defendants have had a chance to respond to the appeal, and the matter is now ripe for decision. This court reviews a nondispositive ruling by a Magistrate Judge pursuant to Local Rule 63.01 and has the authority to "set aside any portion of the ... order found to be clearly erroneous or contrary to law." Local Rule 63.01, E.D.N.C. (1994).

I. FACTS
In Part 1 of his 19 December order, Judge Denson ruled that defendant Legg Mason's branch audit reports were protected from discovery pursuant to the self-critical analysis privilege. Plaintiff contends that the self-critical analysis privilege is not recognized by the Fourth Circuit and that, even if it were, it is not applicable under the facts of this case. Defendants insist that the self-critical analysis protects these documents.
Judge Denson and all parties agree that the self-critical analysis privilege applies to documents that are created in the interest of the public and would not have been created without the privilege to protect them. Judge Denson recognized three criteria to the application of the privilege: "(1) the information results from self-critical analysis undertaken by the party seeking protection; (2) the public has a strong interest in preserving the free flow of the type of information sought; and (3) the information is of the type whose flow would be curtailed if discovery were allowed." Note, The Privilege of Self-Critical Analysis, 96 Harv.L.Rev. 1083, 1086 (1983). He concluded that the Fourth Circuit effectively recognized this privilege, consisting of the above-enumerated elements, in the case of Keyes v. Lenoir Rhyne College, 552 F.2d 579 (4th Cir), cert. denied, 434 U.S. 904, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). In Keyes, the court held that the defendant college's faculty evaluations were not discoverable because of the need for frankness and honesty in these reports. Judge Denson concluded that the Keyes court believed that the reports would not have been truthful if it had been known they would be subject to discovery and stated that it is the logic of Keyes that has since become known as the self-critical analysis doctrine. (19 December 1994 Order at 3, hereinafter Order).
Judge Denson then addressed plaintiff's assertion that the alleged privileged documents do not meet the third element outlined above which requires that the production of the documents would be curtailed if discovery were allowed. He concluded that it "would be illogical for investment brokers to continue to generate internal audits not required by law if those audits were available to be used against them in litigation brought by investors who lost money." (Order at 4.)
*542 Judge Denson applied the self-critical analysis to defeat the discovery of the compliance audits based on his reading of Keyes and his belief that the third element of the privilege is met. The court respectfully disagrees on both grounds and for the reasons explained below, overrules the denial of the motion to compel.

II. DISCUSSION
The reliance on Keyes to resolve this issue was erroneous. Keyes was seriously questioned, if not implicitly overruled, by the United States Supreme Court in University of Pennsylvania v. E.E.O.C., 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). In University of Pennsylvania, the E.E.O.C. subpoenaed confidential peer review records and the university refused to comply. The university claimed that the documents were protected under common law peer review privilege, using the same logic applied in the Keyes case. The Supreme Court rejected this logic privilege and refused to protect the peer review documents. Justice Blackmun, writing for a unanimous Court, stated: "[w]e do not create and apply an evidentiary privilege unless it `promotes sufficiently important interests to outweigh the need for probative evidence.'" University of Pennsylvania, 493 U.S. at 189, 110 S.Ct. at 582 (1990) (quoting Trammel v. United States, 445 U.S. 40, 51, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980). The court continued with an explanation that the application of privileges are provided for by Federal Rule of Evidence 501[1] which
manifests a congressional desire not to freeze the law of privilege but rather to provide the courts with flexibility to develop rules of privilege on a case-by-case basis, we are disinclined to exercise this authority expansively. We are especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself.
University of Pennsylvania at 189, 110 S.Ct. at 582. (internal citation omitted).
Reliance on the Keyes opinion is further questioned by the facts that two recent decisions by United States District Courts in the Fourth Circuit have concluded that the Fourth Circuit does not recognize the self-critical analysis privilege and has rejected the precedential value of Keyes. In re Grand Jury Proceedings, 861 F.Supp. 386 (D.Md.1994); Etienne v. Mitre Corp., 146 F.R.D. 145 (E.D.Va.1993). Both cases acknowledge the Keyes decision and note that it made no mention of the self-critical analysis privilege in reaching its decision. As a result, both District Court opinions conclude that the Fourth Circuit has yet to apply the specific privilege at issue here, although Keyes contained a somewhat parallel analysis which has been questioned.
The ruling below also upheld the privilege in the face of plaintiff's argument that the third requirement of the privilege had not been met. This requirement questions whether self-critical documents will continue to be produced if a party knows such documents may one day be subject to discovery. Based on an affidavit filed by defendants suggesting that the production of the audit reports is purely voluntary, Judge Denson concluded that "it would be illogical for investment brokers to continue to generate internal audits not required by law if those audits were available to be used against them in litigation." (Order at 4).
In her appeal, plaintiff contends that the audit reports at issue are not produced voluntarily, but instead are required under Article III, § 27 of the National Association of Security Dealers (NASD). In relevant part, this rule states:
Each member shall conduct a review, at least annually, of the business in which it engages, which review shall be reasonably designed to assist in detecting and preventing violations of and achieving compliance with the applicable securities laws and regulations, and with the rules of this *543 Association. Each member shall review the activities of each office which shall include the periodic examination of customer accounts to detect and prevent irregularities or abuses....
Defendant Legg Mason is a member of NASD and is governed by its rules. Although its rules are not law, they certainly suggest that defendants have an obligation to continue to produce the branch audit reports and will continue to do so regardless of their use in litigation. This fact weighs significantly in the court's belief that the audit reports should be produced.
Finally, the court believes that public policy and need dictate the production of the audit reports. It must be remembered that the self-critical analysis privilege exists out of concern for the public and is not personal to the one asserting the privilege. Todd v. South Jersey Hosp. Sys., 152 F.R.D. 676 (D.N.J.1993). In the case at bar, the goal of the internal branch audit was to discover any wrongdoing and to correct it. Defendants should not be allowed to shield the results of the audit, regardless of whether they contain evidence of wrongdoing, because those audits were done to protect defendants' clients and the public in general. Further, plaintiff has a substantial need for the information contained in the audits in order to make her case. Plaintiff has made a claim against defendant Legg Mason for negligent supervision of defendant Peskin. Information in the branch audit reports could relate directly to this claim, as the reports contain information regarding Peskin's management of plaintiff's account and would reflect the information Legg Mason had concerning any inappropriate action by Peskin.

III. CONCLUSION
For the reasons stated above, the order denying plaintiff's motion to compel is OVERRULED and plaintiff's motion to compel is ALLOWED. Defendants are ORDERED to produce the branch audit reports at issue within ten (10) days of this order.
NOTES
[1] Rule 501 provides, in pertinent part:

Except as otherwise required by the Constitution ... or provided by Act of Congress or in rules prescribed by the Supreme Court ..., the privilege of a witness ... shall be governed by the principles of common law as they may be interpreted by the courts of the United States in light of reason and experience.