**SPENCER SAVINGS BANK, SLA f/k/a Spencer Savings and Loan Association, Plaintiff,**

v.

**EXCELL MORTGAGE CORP., et al., Defendants.**

Civil Action No. 91–4909 (JCL).

United States District Court, D. New Jersey.

March 7, 1997.

Philip L. Guarino, Ross & Hardies, Somerset, NJ, for Spencer Savings Bank, SLA.

Shalom D. Stone, Walder, Sondak & Brogan, P.A, Roseland, NJ, for Excell Mortgage Company, David Greenberg, Greenberg & Covitz, and Group One.

Morton Covitz, Englewood Cliffs, NJ, pro se and for Greenberg & Covitz.

David R. Kott, McCarter & English, Newark, NJ, for Commonwealth Title Ins. Co.

Ronald Edward Wiss, Wolff & Samson, Roseland, NJ, for Ticor Title Ins. Co.

### OPINION

HEDGES, United States Magistrate Judge.

### I. INTRODUCTION

Defendants Excell Mortgage Company, David Greenberg, Greenberg & Covitz, and Group One seek an order compelling the disclosure of a review and report of Fin Pro Financial Services ("FINPRO") and a review and report of plaintiff's Loan Review Committee. Plaintiff alleges that both sets of materials are protected from discovery by the self-critical analysis privilege. The issue of whether the privilege applies was brought to my attention during a case management conference on October 28, 1996.[1] I directed

1. Pursuant to the October 28th Case Manage- ment Order, I informed the parties that I would

the parties to address plaintiff's assertion of the privilege. I have considered the papers submitted in support of and in opposition to the application. There was no oral argument. Rule 78.

## II. DISCUSSION

Defendants first argue that the privilege is not applicable as plaintiff has not demonstrated that it protects the documents in issue from discovery.[2] Defendants also contend that plaintiff has waived the privilege by failing to disclose the existence of the documents in its answers to interrogatories.

### A. Rule 501 Analysis

■ Any analysis of the law of privilege must begin with Rule 501 of the Federal Rules of Evidence

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness ... shall be determined in accordance with State law.

"Under this rule, in federal question cases the federal common law of privileges applies." *Wm. T. Thompson Co. v. General*

*Nutrition Corp.,* 671 F.2d 100, 103 (3d Cir. 1982). "[W]hen there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule." 671 F.2d at 104. However, a federal court may "resort to state law analogies for the development of a federal common law of privileges in instances where the federal rule is unsettled." 671 F.2d at 104. Here, plaintiff has asserted both federal and state law causes of action. Accordingly, the federal law of privilege governs.

In its enactment of Rule 501, Congress "manifested an affirmative intention not to freeze the law of privilege. Its purpose rather was to 'provide the courts with the flexibility to develop rules of privilege on a case-by-case basis ...'" *Trammel v. United States,* 445 U.S. 40, 47, 100 S.Ct. 906, 911, 63 L.Ed.2d 186 (1980) (*quoting* 120 CONG. REC. 40,891 (1974) (statement of Rep. William Hungate)). However, "the Court has been disinclined to exercise its authority expansively." *University of Pennsylvania v. EQual Employment Opportunity Commission,* 493 U.S. 182, 189, 110 S.Ct. 577, 582, 107 L.Ed.2d 571 (1990). Under Rule 26, there is a broad policy which favors full disclosure of facts during discovery. *Wei v. Bodner,* 127 F.R.D. 91, 95–96 (D.N.J.1989). Consistent with this liberal discovery policy is the view that privileges are not favored. *Herbert v. Lando,* 441 U.S. 153, 175, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115 (1979); *In re Grand Jury,* 103 F.3d 1140, 1149 (3d Cir. 1997). Privileges ... "are not lightly created

---

adopt the approach articulated by Magistrate Judge Rosen in *Harding v. Dana Transport,* 914 F.Supp. 1084 (D.N.J.1996), regarding plaintiff's claim of self-critical analysis privilege as it applied to a loan audit conducted by FINPRO and by plaintiff's officers. I also ordered that, if plaintiff was able to show that the self-critical analysis privilege was applicable, it would be entitled to assert the privilege only as to recommendations and opinions contained in documents. However, in light of defendants' contention that the privilege is inapplicable, I must first determine whether it is or should be recognized at federal common law.

2. Defendants also argue that a party asserting the self-critical analysis privilege must meet the following test:

[F]irst, the information must result from a self-critical analysis undertaken by the party seeking protection, second, the public must have a strong interest in preserving the free flow of the type of information sought, finally, the information must be of the type whose flow would be curtailed if discovery were allowed. Note, *The Privilege of Self–Critical Analysis,* 96 HARV. L. REV. 1083, 1086 (1983). To these requirements should be added the general proviso that no document will be accorded a privilege unless it was prepared with the expectation that it would be kept confidential, and has in fact been kept confidential. [*Dowling v. American Hawaii Cruises, Inc.,* 971 F.2d 423, 425–26 (9th Cir.1992) ].

I decline to address the *Dowling* factors given my ruling on recognition of the privilege.

nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974).

The Supreme Court has been hesitant to expand common law testimonial privileges. Privileges hinder the fundamental principle that " 'the public ... has a right to every man's evidence.' " *Trammel, supra,* 445 U.S. at 50, 100 S.Ct. at 912 (*quoting United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950)); *see Jaffee v. Redmond,* — U.S. —, —, 116 S.Ct. 1923, 1928, 135 L.Ed.2d 337 (1996). Privileges must be strictly construed and tolerated " 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.' " *Trammel, supra,* 445 U.S. at 50, 100 S.Ct. at 912 (*quoting Elkins v. United States,* 364 U.S. 206, 234, 80 S.Ct. 1453, 1454, 4 L.Ed.2d 1688 (1960) (Frankfurter, J, *dissenting* )); *see Jaffee, supra,* — U.S. at —, 116 S.Ct. at 1928.

While cognizant of these principles, in *Trammel* the Supreme Court modified the common law privilege for adverse spousal testimony "so that the witness-spouse alone has a privilege to refuse to testify adversely...." 445 U.S. at 53, 100 S.Ct. at 914. In doing so, the Supreme Court observed that its modification of the common law privilege for adverse spousal testimony was consistent with the trend among the states and scholarly criticism. 445 U.S. at 48–50, 100 S.Ct. at 911–13. The Supreme Court further reasoned that the "ancient foundations" for the sweeping privilege against adverse spousal testimony no longer existed. and that the contemporary reason justifying such a privilege was not persuasive. 445 U.S. at 52, 100 S.Ct. at 913.

In *University of Pennsylvania,* the Supreme Court declined to recognize a common law privilege "against the disclosure of peer review materials" in a Title VII action. 493 U.S. at 189, 110 S.Ct. at 582. In addressing the creation and application of evidentiary privileges, the Supreme Court cautioned: "[w]e do not create and apply an evidentiary privilege unless it 'promotes sufficiently important interests to outweigh the need for probative evidence.' " 493 U.S. at 189, 110 S.Ct. at 582 (*quoting Trammel, supra,* 445 U.S. at 51, 100 S.Ct. at 912).

In rejecting the claim of privilege, the Supreme Court in *University of Pennsylvania* noted that Congress had been aware of the possible burden associated with the disclosure of peer review materials when it enacted Title VII. 493 U.S. at 191, 110 S.Ct. at 583. Moreover, recognition of a common law privilege against the disclosure of peer review materials would probably result in the assertion of similar privilege claims, and the asserted privilege had no historical or statutory basis. 493 U.S. at 194–95, 110 S.Ct. at 584–85.

In *Jaffee,* the Supreme Court did recognize a privilege protecting confidential communications between a psychotherapist and her patient. — U.S. at —, 116 S.Ct. at 1928. Guided by *Trammel* and *University of Pennsylvania,* the Supreme Court concluded that a psychotherapist privilege " 'promotes sufficiently important interests to outweigh the need for probative evidence....' " — U.S. at —, 116 S.Ct. at 1928 (*quoting Trammel, supra,* 445 U.S. at 51, 100 S.Ct. at 912).

The Supreme Court recognized the psychotherapist-patient privilege, in part, because it appeared among the nine specific privileges recommended by the Advisory Committee on Rules of Evidence in 1972.[3] — U.S. at — – — & n. 7, 116 S.Ct. at 1928–30 & n. 7; *see D'Aurizio v. Borough of Palisades Park,* 899 F.Supp. 1352, 1358 (D.N.J.1995) (noting that political vote privilege was recognized by Supreme Court in proposed Rule 507); *see also Proposed Rules of Evidence for the United States Courts and Magistrates,* 56 F.R.D. 183, 230–61 (1973). The Supreme Court further noted that all 50

---

**3.** In contrast, in *United States v. Gillock,* the Supreme Court rejected a state legislative privilege in part because no such privilege was included in the Advisory Committee's draft of the proposed rules. 445 U.S. 360, 367–68, 100 S.Ct.

1185, 1190–91, 63 L.Ed.2d 454 (1980); *see In re: Grand Jury, supra,* 103 F.3d at 1151 (rejecting parent-child privilege based partly on fact that Advisory Committee's draft contained no such privilege).

states as well as the District of Columbia had enacted legislation recognizing some form of the psychotherapist privilege. *Jaffee, supra,* —— U.S. at —— & n. 11, 116 S.Ct. at 1929 & n. 11 (listing statutes). The Supreme Court emphasized that "the policy decisions of the States bear on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one." *Jaffee, supra,* —— U.S. at —— – ——, 116 S.Ct. at 1929–30; *see Trammel, supra,* 445 U.S. at 48–50, 100 S.Ct. at 911–12. " ... [T]he existence of a consensus among the States indicates that 'reason and experience' support recognition of the privilege." *Jaffee, supra,* —— U.S. at ——, 116 S.Ct. at 1930.

Both *Trammel* and *University of Pennsylvania* emphasized the need for federal courts to be cautious in recognizing a new privilege. *Trammel, supra,* 445 U.S. at 50, 100 S.Ct. at 912; *University of Pennsylvania, supra,* 493 U.S. at 189, 110 S.Ct. at 582. However, that caution must be considered with Rule 501, which allows federal courts to be flexible in the development of rules governing privileges. *United States v. Gillock,* 445 U.S. 360, 367, 100 S.Ct. 1185, 1190–91, 63 L.Ed.2d 454 (1980); *In re Grand Jury Investigation (Appeal of United States),* 918 F.2d 374, 378–79 (3d Cir.1990); *D'Aurizio, supra,* 899 F.Supp. at 1355 n. 2. Nevertheless, federal courts have rarely exercised their authority under Rule 501 to expand common law testimonial privileges. *See, e.g., In re Grand Jury, supra,* 103 F.3d at 1149 (declining to recognize parent-child privilege), *United States v. Schoenheinz,* 548 F.2d 1389, 1390 (9th Cir. 1977) (declining to recognize state created employer-stenographer privilege, which prohibits stenographer from disclosing communication or dictation made by employer to him or her in course of employment without employer's consent), *In re Grand Jury Impaneled on January 21, 1975,* 541 F.2d 373, 382 (3d Cir.1976) (declining to recognize required-reports privilege, which provides for non-disclosure of certain reports and records which citizens are required by law to provide to government).

**B. Test for Recognition of a Common Law Privilege**

I must first determine the proper test to be applied for recognition of a common law privilege. In *D'Aurizio, supra,* 899 F.Supp. at 1355, I adopted the test advanced by Professors Mueller and Kirkpatrick to determine whether a privilege should be recognized.[4] That test consists of the following factors:

(1) the importance to the community of the relationship sought to be protected, (2) whether community values would be offended by governmental intrusion into the privacy of the relationship, (3) the extent to which societal traditions and professional standards create a reasonable expectation of confidentiality in such a relationship, (4) whether the purpose of the relationship depends upon full and open communication; (5) the extend to which such communication would be impeded by non-recognition of a privilege; and (6) the direct and indirect benefits to the public from encouraging the communication and protecting the privacy of the relationship in comparison to the cost to the litigation process resulting from the loss of evidence. [*D'Aurizio,* 899 F.Supp. at 1355 (*quoting* 2 C. Mueller & L. Kirkpatrick, *Federal Evidence* § 172 at p. 232 (2d ed. 1994) (footnote omitted)) ].

"[A] party who asserts a privilege has the burden of proving its existence and applicability." *In re Grand Jury Investigation, supra,* 918 F.2d at 385 n. 15, *see Harding v. Dana Transport, Inc.,* 914 F.Supp. 1084, 1089–90 (D.N.J.1996); *Wei, supra,* 127 F.R.D. at 94. A court must undertake a two-step process in deciding whether to recognize a privilege. *D'Aurizio, supra,* 899 F.Supp. at 1356 "First, a court must decide whether a privilege exists or should exist. That decision must 'follow from a more broad-based view of how the privilege will work in general.' *In Re Grand Jury (Granite Purchases),* 821 F.2d 946, 955 (3d Cir.1987), *cert denied*

---

**4.** While I followed Mueller and Kirkpatrick, my analysis in *D'Aurizio* was consistent with both Dean Wigmore's four prerequisites for the recognition of a common law privilege and the balanc-

ing process utilized by Judge Weinstein in *United States v. King,* 73 F.R.D. 103 (E.D.N.Y.1976). *D'Aurizio, supra,* 899 F.Supp. at 1355 n. 3.

*sub nom. Colafella v. United States,* 484 U.S. 1025, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988). Second, the court must decide how to apply the privilege to a particular case." *D'Aurizio,* 899 F.Supp. at 1356.

## C. Self–Critical Analysis Privilege

 A qualified self-critical analysis privilege has been recognized under both New Jersey and federal common law. *See Todd v. South Jersey Hosp. System,* 152 F.R.D. 676, 683 (D.N.J.1993); *Wylie v. Mills,* 195 N.J.Super. 332, 338, 478 A.2d 1273 (Law Div.1984).[5] However, I am satisfied that the privilege should *not* be recognized at federal common law.

### 1. Origins of the Self–Critical Analysis Privilege

The privilege had its origin in *Bredice v. Doctors Hospital, Inc.,* 50 F.R.D. 249 (D.D.C.1970), *aff'd,* 479 F.2d 920 (D.C.Cir. 1973). In the context of a medical malpractice action, *Bredice* held that, absent a showing of "exceptional necessity," a qualified privilege existed to keep confidential the minutes of hospital medical staff committee meetings during which physicians evaluated the clinical practices of the hospital. 50 F.R.D. at 250–51. The court reasoned that confidentiality was essential to the success of the self-evaluative staff meetings which, in turn, were essential to improving patient care and treatment. 50 F.R.D. at 250.

*Bredice* should not be relied on as a basis for recognition of a new federal common law privilege. First, the *Bredice* court was not compelled to address the existence or application of the privilege. *Wei, supra,* 127 F.R.D. at 100. When *Bredice* was decided Rule 34 "required that there be good cause for discovery to be obtained." *Bredice* held that the materials requested were not rele-

vant to the malpractice action, and so good cause did not exist for the discovery of the documents in issue. *Bredice, supra,* 50 F.R.D. at 250. Accordingly, absent good cause as required under then-Rule 34, *Bredice* did not need to address any privilege. *Wei, supra,* 127 F.R.D. at 100.

Second, *Trammel, University of Pennsylvania,* and *Jaffee* undermine *Bredice. Wei,* 127 F.R.D. at 100. Since *Bredice* was decided, the Supreme Court has consistently emphasized its reluctance to create or expand the law of privilege.[6] *See Jaffee, supra,* —— U.S. at ——, 116 S.Ct at 1928; *University of Pennsylvania, supra,* 493 U.S. at 189, 110 S.Ct. at 582, *Trammel, supra,* 445 U.S. at 50, 100 S.Ct. at 912, *Nixon, supra,* 418 U.S. at 710, 94 S.Ct. at 3108–09; *Herbert, supra,* 441 U.S. at 175, 99 S.Ct. at 1648.

Finally, the *Bredice* requirement of "exceptional necessity" to overcome a privilege is inconsistent with the principle that privileges "must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Trammel, supra,* 445 U.S. at 50, 100 S.Ct. at 912 (*quoting Elkins,* 364 U.S. at 234, 80 S.Ct. at 1454); *see Wei, supra,* 127 F.R.D. at 100–101. Bredice is not instructive on whether a qualified self-critical analysis privilege should be recognized at federal common law.

### 2. States Do Not Uniformly Recognize the Privilege

Not only should recognition of the privilege be denied under principles articulated by the Supreme Court, but the self-critical analysis privilege lacks any uniform recognition among all the states. Most states have

5. These same courts emphasize that it may be pierced by a showing of "particularized need that outweighs the public interest in confidentiality." *Todd v. South Jersey Hospital System,* 152 F.R.D. 676, 683 (D.N.J.1993) (*quoting McClain v. College Hospital,* 99 N.J. 346, 351, 492 A.2d 991 (1985)).

6. Outside of the District of Columbia Circuit, other federal courts which have recognized the

privilege have adopted the balancing test set forth in *Dowling v. American Hawaii Cruises, Inc.,* 971 F.2d 423, 425–26 (9th Cir.1992). *See Todd v. South Jersey Hosp. System,* 152 F.R.D. 676, 683 (D.N.J.1993); *Hardy v. New York News, Inc.,* 114 F.R.D. 633, 641–642 (S.D.N.Y.1987) However, these courts did not analyze the privilege against the principles set forth by the Supreme Court.

granted statutory protection to medical peer reviews of patient care. *Sanderson v. Frank S. Bryan, M.D. Ltd.,* 361 Pa.Super. 491, 522 A.2d 1138, 1140 n. 3 (1987), *app. denied,* 517 Pa. 624, 538 A.2d 877 (1988) (46 states have adopted statutory privilege). A number of states have enacted some form of the self-critical analysis privilege in other contexts. *See, e.g.,* COLO. REV. STAT. ANN. § 13–25–126.5 (West 1996) (qualified privilege for environmental audit report), LA. REV. STAT. ANN. § 6:336 (West 1996) (privilege for self-evaluations by bank or other financial institution); MINN. STAT. ANN. §§ 114C.22; 114C.26 (West 1996) (privilege for environmental audit report and self-evaluation form); MISS. CODE ANN. § 49–2–71 (1995) (qualified privilege for environmental self-evaluation report); UTAH CODE ANN. §§ 19–7–105; 19–7–106, 19–7–107 (1995) (qualified privilege for environmental audit report in administrative proceeding).

Few state courts have considered whether the privilege should exist.[7] Most courts which have recognized the privilege have done so only in the limited context of statutes protecting medical review committee materials. *See, e.g., Tucson Medical Center, Inc. v. Misevch,* 113 Ariz. 34, 545 P.2d 958, 961–62 (1976); *Posey v. District Court,* 196 Colo. 396, 586 P.2d 36, 37–38 (1978), *Dade County Medical Ass'n v. Hlis,* 372 So.2d 117, 118–20 (Fla.Dist.Ct.App.1979); *Oviatt v. Archbishop Bergan Mercy Hosp.,* 191 Neb. 224, 214 N.W.2d 490, 491–92 (1974); *Palmer v. City of Rome,* 120 Misc.2d 558, 466 N.Y.S.2d 238, 239–40 (N.Y.Sup.Ct.1982). Some state courts have recognized the privilege in other contexts *See, e.g., Wylie,* 195 N.J.Super. at 338, 478 A.2d 1273 (qualified privilege for self-evaluative portions of corporate accident report).

In contrast, the privilege has been rejected in different contexts. *See, e.g. Jolly v. Superior Court,* 112 Ariz. 186, 540 P.2d 658, 662–63 (1975) (refusing to extend privilege to internal safety investigation report of company); *Combined Communications Corp. v. Public Service Co.,* 865 P.2d 893, 898 (Colo.

Ct.App.1993) (noting that Colorado courts do not recognize self-critical analysis privilege); *Southern Bell Telephone & Telegraph Co. v. Beard,* 597 So.2d 873, 876 n. 4 (Fla.Dist.Ct. App.1992) (noting that privilege is not expressly accepted in state of Florida); *Scroggins v. Uniden Corp. of America,* 506 N.E.2d 83, 86 (Ind.Ct.App.1987) *(stating that no self-critical analysis privilege exists in Indiana) University of Kentucky v. Courier–Journal & Louisville Times Co.,* 830 S.W.2d 373, 378 (Ky.Sup.Ct.1992) *(refusing to adopt privilege for responses to inquiries of collegiate athletic association); Nazareth Literary & Benevolent Inst. v. Stephenson,* 503 S.W.2d 177, 178–79 (Ky.Sup.Ct. 1973) *(refusing to extend privilege to internal hospital reports concerning methods of treatment and correction of mistakes); State ex rel. Celebrezze v. CECOS Int'l. Inc.,* 66 Ohio App.3d 262, 583 N.E.2d 1118, 1121 (1990) *(noting that Ohio courts have not adopted self-critical analysis privilege); Davison v. St. Paul Fire & Marine Ins. Co.,* 75 Wis.2d 190, 248 N.W.2d 433, 440–42 (1977) (refusing to recognize privilege to protect reports and minutes of hospital peer review committee).

The above analysis reflects that there is no "consistent body of policy determinations by state legislatures," *Jaffee, supra,* —— U.S. at ——, 116 S.Ct. at 1930, which would support the recognition of a self-critical analysis privilege. That the majority of state legislatures have declined to create such a privilege suggests that "reason and experience" does not support its recognition.

### 3. Division Among the Federal Courts

The federal courts are also divided on whether to recognize a self-critical analysis privilege. This division appears because "[t]he Supreme Court and circuit courts have neither definitively denied the existence of such a privilege, nor accepted it and defined its scope." *Dowling v. American Hawaii Cruises, Inc.,* 971 F.2d 423, 425 n. 1 (9th Cir.1992). A number of decisions apparently recognize some form of the privilege.[8] *E.g.,*

---

7. In contrast, both the political vote privilege and the psychotherapist privilege are widely recognized throughout the United States. *See Jaffee,*

*supra,* —— U.S. at ——, 116 S.Ct. at 1929; *D'Aurizio, supra,* 899 F.Supp. at 1356–58.

8. While this compilation is illustrative of the division among federal courts, it is not exhaustive.

*E.E.O.C v. General Telephone Co.,* 885 F.2d 575, 578 (9th Cir.1989) (recognizing qualified privilege; waived by employer who offered evidence of its affirmative action efforts to prove nondiscrimination); *Coates v. Johnson & Johnson,* 756 F.2d 524, 551–552 (7th Cir. 1985) (same); *Reichhold Chemicals, Inc. v. Textron, Inc.,* 157 F.R.D. 522, 524 (N.D.Fla. 1994) (recognizing privilege to protect only subjective impressions and evaluations, not objective facts); *Culinary Foods, Inc. v. Raychem Corp.,* 151 F.R.D. 297, 304 (N.D.Ill. 1993) (refusing to apply privilege abstractly); *In Re LTV Securities Litigation,* 89 F.R.D. 595, 619 (N.D.Tex.1981) (recognizing corporate self-investigative privilege for special officers or special counsel investigating activities of publicly-held corporations).

Some federal courts recognize the existence of the self-critical analysis privilege, while limiting the nature of the information protected *E.g., Dowling, supra,* 971 F.2d at 425–26 (noting that privilege does not protect routine internal corporate reviews of matters regarding safety); *Soto v. City of Concord,* 162 F.R.D. 603, 611–12 (N.D.Cal.1995) (noting that privilege does not protect police departments' internal affairs documents and witness statements about investigation); *Wei, supra,* 127 F.R.D. at 100 (concluding that neither state nor federal self-critical analysis privileges protected documents requested in antitrust action); *United States v. Dexter Corp.,* 132 F.R.D. 8, 10 (D.Conn.1990) (refusing to recognize privilege for corporate self-evaluative documents in action brought by government to enforce Clean Water Act); *Burke v. New York City Police Dept.,* 115 F.R.D. 220, 228 (S.D.N.Y.1987) (*noting* that no privilege protected evaluation reports and investigation files conducted by police department in discrimination suit); *Hardy v. N.Y. News, Inc.,* 114 F.R.D. 633, 640, 643 (S.D.N.Y.1987) (refusing to recognize privilege to protect voluntarily prepared documents under affirmative action program); *Federal Trade Commission v. TRW, Inc.,* 628 F.2d 207, 211 (D.C.Cir.1980) (stating that privilege does not apply to documents sought by government agency). Other courts have either rejected the existence of the privilege

or declined to expressly accept it. *E.g., In Re Worlds of Wonder Securities Litigation,* 147 F.R.D. 208, 213 (N.D.Cal.1992) (noting that no common law privilege shields ordinary business reports and financial documents from disclosure); *Siskonen v. Stanadyne, Inc.,* 124 F.R.D. 610, 612 (W.D.Mich. 1989) (declining to recognize self-critical analysis privilege under Michigan law).

### 4. No Uniform Support Among Scholars

Uniform support among scholars is also lacking. Dean Wigmore has never addressed a common law self-critical analysis privilege [9] Critics who have discussed the privilege disagree on whether it should be recognized D. HITTMER, W. SCHWARZER, A. TASHIMA, & J. WAGSTAFFE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL P. 11:20—P 11:83.7 (The Rutter Group of Texas, Ltd., 5th Circuit ed.1996); 23 C. WRIGHT & K. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5431 (1996 Supp.); Leonard, *Codifying A Privilege For Self-Critical Analysis,* 25 HARV. J. ON LEGIS. 113 (Winter 1988); McNab, *Criticizing The Self-Criticism Privilege,* 1987 U. ILL. L. REV. 675 (1987); Flanagan, *Rejecting A General Privilege For Self-Critical Analyses,* 57 GEO. WASH. L. REV. 551 (1983).

Opponents of the self-critical analysis privilege argue that it "does not provide the desired benefit of encouraging self-evaluative communications within institutions Instead, the self-criticism privilege impedes discovery without providing any measurable off-setting benefit." McNab, *supra,* at 675. Proponents have concluded "that at least in some circumstances the possibility that the results of a critical self-study could be discoverable in litigation would chill the self-evaluative process, and that the law should therefore erect at least a partial shield in the form of a discovery privilege." Leonard, *supra.* at 117.

### 5. Privilege Not Included in Proposed Rules of Evidence

Unlike the psychotherapist-patient privilege and the political vote privilege, the self-

---

**9.** One critic has even argued that the privilege is not supported by Wigmore's analysis. *See* McNab, *Criticizing The Self–Criticism Privilege,* 1987 U. ILL. L. REV. 675, 683–84 (1987).

critical analysis privilege was omitted from the list of privileges identified by the Advisory Committee on Rules of Evidence in 1972 Importantly, while Congress declined to adopt the proposed Rules of Evidence, it did not disapprove them. *D'Aurizio, supra*, 899 F.Supp. at 1356. "[T]he proposed rules provide a useful reference point and offer guidance in defining the existence and scope of evidentiary privileges in the federal courts." *In re Grand Jury Investigation (Appeal of United States), supra*, 918 F.2d at 380.

In *Gillock* the Supreme Court stated that, since "[n]either the Advisory Committee. the Judicial Conference, nor this Court saw fit ... to provide the privilege sought ... that fact does suggest that the claimed privilege was not thought to be either indelibly ensconced in our common law or an imperative of federalism." 445 U.S. at 367–68, 100 S.Ct. at 1190–91 (footnote omitted).[10] The omission of the self-critical analysis privilege from the proposed privileges strongly indicates that the Advisory Committee, similar to the majority of state legislatures, did not find the privilege "indelibly ensconced" in the federal common law. "A federal court should give due consideration, and accord proper weight, to the judgment of the Advisory Committee and of state legislatures on this issue when it evaluates whether it is appropriate to create a new privilege pursuant to Rule 501." *In re Grand Jury, supra*, 103 F.3d at 1151.

### 6. Privilege Does Not Foster Important Public Interests

"Common law privileges exist to foster underlying societal values."[11] *D'Aurizio, supra*, 899 F.Supp. at 1360. I am not persuaded by plaintiff's arguments that the self-

critical analysis privilege furthers important public interests.

Most recently, the controversy surrounding recognition of the self-critical analysis privilege has arisen in the context of employment discrimination suits. Those courts which have held that the privilege protects internal evaluations of affirmative action programs have noted that these programs "depend to a certain degree on voluntary compliance by employers and that employers must feel free to be candid in expressing their goals and policies for eradicating discrimination." *Adams v. Pinole Point Steel Co.*, 65 Fair Empl. Prac. Cas. (BNA) 782, 783, 1994 WL 442725 (N.D.Cal.1994), *see Webb v. Westinghouse Elec. Corp.*, 81 F.R.D. 431, 433 (E.D.Pa.1978); *Dickerson v. U.S. Steel Corp.*, 14 Fair Empl. Prac. Cas. (BNA) 1448, 1449, 1976 WL 596 (E.D.Pa.1976). If disclosure of these programs is compelled, employers' compliance with government-mandated reporting might be hindered. *See Dickerson*, 14 Fair Empl. Prac. Cas. (BNA) at 1449 (reasoning that compelled disclosure will discourage employers from making candid evaluations and encourage them to set equal employment goals at minimum levels).

However, based on societal interests. a significant number of courts have declined to recognize the privilege as applied to such programs First, "[l]itigation is itself a means of furthering the goal of equal employment opportunity." *Martin v. Potomac Electric Power Co.*, 58 Fair Empl. Prac. Cas. (BNA) 355, 357, 1990 WL 158787 (D.D.C.1990), *see Etienne v. Mitre Corp.*, 146 F.R.D. 145, 148–49 (E.D.Va.1993) (noting that private parties file suits to "eradicate discriminatory prac-

---

**10.** Both the Supreme Court's rejection of a state legislative privilege in *Gillock, supra*, 445 U.S. at 367–68, 100 S.Ct. at 1190–91. and the Third Circuit's rejection of a parent-child privilege in *In re: Grand Jury, supra*, 103 F.3d at 1151. were based in part on the fact that these asserted privileges were not included in those recommended by the Advisory Committee.

**11.** Many common law "privileges are rooted in the imperative need for confidence and trust." *Trammel*, 445 U.S. at 51, 100 S.Ct. at 913. For example:

> The priest-penitent privilege recognizes the human need to disclose to a spiritual counselor,

in total and absolute confidence, .... The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out.Similarly, the physician must know all that a patient can articulate in order to identify and to treat disease. barriers to full disclosure would impair diagnosis and treatment. *[Trammel*, 445 U.S. at 51, 100 S.Ct. at 913].

To this list should be added the political vote privilege, the purpose of which is to ensure voter secrecy *D'Aurizio*, 899 F.Supp. at 1360.

tices of private employers"), *Hardy, supra,* 114 F.R.D. at 640 (stressing strong public policy which favors "private enforcement of anti-discrimination laws").

To the extent that the privilege prevents a party from obtaining the evidence needed to prove discriminatory intent, the privilege inhibits the promotion of enforcing equal employment laws *Webb,* 81 F.R.D. at 433; *Martin,* 58 Fair Empl. Prac. Cas. (BNA) at 357 Courts have stressed the importance of remaining "cognizant of the possible resulting perils when disclosure is prevented of those documents which may yield crucial evidence regarding an employer's intent and motivation." *Tharp,* 149 F.R.D. at 184, 62 Fair Empl. Prac. Cas. (BNA) at 576; *see Hardy,* 114 F.R.D. at 640 (" '[i]n resolving the tensions between the opposed needs of disclosure [and] confidentiality we are reminded that the discovery rules are to be accorded broad and liberal treatment, particularly where proof of intent is required' ") (*quoting Gray v. Board of Higher Education,* 692 F.2d 901, 904 (2d Cir.1982)).

Second, some courts have declined to recognize the privilege, in part, because often affirmative action programs are created solely to comply with government-mandated reporting. *Tharp v. Sivyer Steel Corp.,* 149 F.R.D. 177, 182–83, 62 Fair Empl Prac Cas (BNA) 570, 575 (S.D.Iowa 1993); *Adams,* 65 Fair Empl Prac. Cas. (BNA) at 783 These courts reason that "disclosure ... will not result in diminished equal employment evaluations because employers are mandated to file them." *Tharp,* 149 F.R.D. at 182, 62 Fair Empl. Prac. Gas. (BNA) at 575; *see Etienne v. Mitre Corp.,* 146 F.R.D. 145, 148 (E.D.Va.1993), *Witten v. A.H. Smith & Co.,* 100 F.R.D. 446, 452–54 (D.Md.1984); *O'Connor v. Chrysler Corp.,* 86 F.R.D. 211, 217 (D.Mass.1980); *see also* 41 C.F.R. § 60–1.40 (1992) (identifying federal employers which must comply with development and implementation of affirmative action plans); 41 C.F.R. § 60–2.10 *et seq.* (describing contents of mandated affirmative action programs).

Here, in issue are plaintiff's self-evaluative reviews and reports which were created absent any government mandate. "[W]here self-evaluation has been voluntarily undertaken, '[n]either that fairness rationale nor [an] effective enforcement rationale operates.... No unfairness exists. for no third party required [the defendant] to make a critical self-evaluation, or indeed, any evaluation at all.' " *Hardy,* 114 F.R.D. at 641 (*quoting Resnick v. American Dental Ass'n,* 95 F.R.D. 372, 375 (N.D.Ill.1982)). Accordingly, the justifications in support of applying the privilege to government-mandated reports bear no relevance to my ruling today

Finally, I note that, under appropriate facts, a self-critical analysis could be protected from discovery by the attorney-client privilege or the work product doctrine. *See generally Upjohn v. United States,* 449 U.S. 383, 398–401, 101 S.Ct. 677, 687–88, 66 L.Ed.2d 584 (1981). The Supreme Court in *Upjohn* stressed:

> "Rule 26 accords special protection to work product revealing the attorney's mental processes ... '[i]n ordering, discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.' " [449 U.S. at 400, 101 S.Ct. at 688].

*See Harding, supra,* 914 F.Supp. at 1100–01, 1103 (finding that substance of investigation conducted by corporation's outside counsel fell within scope of attorney-client privilege and work product doctrine, however, investigatory materials fell outside confines of self-critical analysis privilege), Deason, *The Self-Critical Analysis Privilege and Discovery of Affirmative Action Plans in Title VII Suits,* 83 MICH. L. REV. 405, 429 (Nov.1984) ("employer's privacy interests can be protected through the broad control of courts over the relevancy and burdensomeness of discovery. Rule 26(c) ... facilitates this control by authorizing courts to enter a protective order limiting discovery ..."), McNab, *supra,* at 689 ("Rather than creating a self-criticism privilege with broad parameters, courts should recognize that existing tools for controlling discovery present a more legitimate way to protect sensitive materials ..."). The availability of these protections argues against the recognition of a new privilege.

I am satisfied that the self-critical analysis privilege should not be recognized at federal

common law. Accordingly, I need not decide whether the documents in issue fall within the privilege or whether plaintiff has waived it.

### III. CONCLUSION

For the reasons set forth above, I am satisfied that a self-critical analysis privilege does not exist at federal common law. The application of defendants to compel disclosure of the documents in issue is **GRANTED.**